Daniel, J.
The 17th section of 29 Charles 2, ch. 3, requiring that to make good a contract for the sale of goods, wares and merchandise, (for the price of ten pounds and upwards,) the buyer shall accept and actually receive, in whole or in part, the things sold, or give something, in earnest, to bind the bargain, or in part of payment; or that some note or memorandum of the bargain be made and signed by the parties or their agents, has not been adopted in this state. And we have only to enquire whether the case stated in the certificate of facts satisfies the rules regulating like contracts of bargain and sale at the common law. In the case of Tarling v. Baxter, 13 Eng. C. L. R. 199, we are told that where there is a contract for an immediate sale, and nothing remains to be done by the vendor as between him and the vendee, the vendor immediately acquires a property in the price, and the vendee a property in the goods, and then all the consequences resulting from the vesting of the property follow; one of which is, that if it be destroyed, the loss falls upon the vendee. For the same principle, see also 2 Kent Comm. 491; Willis v. Willis, 6 Dana’s R. 47; Potter v. Coward, Meigs’ R. 22; Ingersoll v. Kendall, 13 Smeads & Marsh. 615; Goodrum v. Smith, 3 Humph. R. 542; Miller v. Koger, 9 Humph. R. 231; Magee v. Billingsley, 3 Alab. R. 680; 2 Rob. Pr. 414, *110 415, 495, 497, 498, and cases there cited; and also De Fonclear v. Shottenkirk, 3 Johns. R. 170.
In the case last cited, decided by the Supreme court jjew York, (where they have a statute with provisjons like those of the 17th section of the English statute,) the court said, that independently of the statute, any words importing a bargain, whereby the owner of a chattel signifies his willingness and consent to sell, and whereby another person shall signify his willingness and consent to buy it, in presentí, for a specified price, would be a sale and transfer of the right to the chattel. The same view of the nature of such a contract is strongly and concisely stated by the Supreme court of Tennessee in the case of Potter v. Coward, above cited. It is not (say the court) the delivery or tender of the property, nor the payment or tender of the purchase money, which constitutes a sale. The sale is good and complete as soon as both parties have agreed to the terms, that is, as soon as the vendee says, “ I will pay the price demanded,” and the vendor says, “I will receive it,” the rights of both are instantly fixed.
As soon as such a contract is made in respect to a chattel in the possession of the vendor, and ready for delivery, in the absence of contrary indication or agreement, the vendee has a right to demand the thing sold immediately, but must pay the consideration; and the vendor has the right to demand the consideration money, but must deliver the property. If the vendee tender the purchase money and demand the property, he may maintain detinue or trover if the delivery be refused ; and if the vendor tender the delivery of the property and demand his purchase money, he may have his action of debt or assumpsit, if it be refused. Potter v. Coward and 2 Kent, as above.
The payment of the price and the delivery of the *111 property, however, may have to be simultaneous and concurrent acts, or they may be performable at different times, according to the express agreement of parties, or the obvious nature and indication of the contract. Bell on Sales, 41.
A sale may be just as binding if made on credit as if made for ready money. And in such case the vendee may have a right to maintain his action at once against the vendor for refusing to deliver the property, without making any tender of the price.
And on the other hand, the completeness and efficacy of a sale are not necessarily affected by the consideration that the property is not in the actual possession of the vendor, or if in his possession, is not to be immediately delivered. There is no principle of law which establishes that a sale of personal goods is invalid because they are not in the possession of the owner. The sale of a chattel in the possession of a third person (claiming no adverse title) is not the transfer of a right of action, but is the sale of the thing itself. The Brig Sarah Ann, 2 Sumner’s R. 211.
Hence the vendee may be bound to pay presently, though there be no obligation on the vendor to deliver presently, or indeed at any time: For it may be obvious, from the nature of the contract, that the vendee is to look for the delivery to some third person, in whose custody the property may be at the time of the sale; or that he is himself to take possession of the property wherever it may be found; as in the case of the sale of a horse which is an estray, or of a slave who is a runaway.
And as where the sale is on credit, the vendee may bring his action for the property before he has paid or tendered the price, so where the sale is of property to be delivered at a future day, or not in the possession of the vendor, the latter may have a right to his suit *112 for the price before he has made any tender of the property. The application of these principles to the stated in the certificate of the judge, will, I -¡qqn|C) result in vindicating the propriety of the ver¿IiCt and judgment rendered on them.
It appears that the slave, for the recovery of whose • price the action was brought, was at the time of the contract in custody, and on trial, in the County court of Page, on a charge of larceny. The court had found him guilty, but had hot pronounced its sentence; and to an appeal, made by the counsel of the slave, to the court to inflict but a light punishment upon him, urged on the ground that he was but an accessory, and that the principal, another slave, who had just before been found guilty, had been subjected only to a few stripes, the court replied, that the infliction of so light a punishment on the principal had been induced by the fact that he had been sold, and was to be taken from the commonwealth. The defendant in error, an old lady, the owner of Gilbert, (the slave for whose price the suit is brought,) who was in court, wras then applied to, to know if she would sell her slave; to which she assented, and authorized J. Y. Men efe e to sell him. The plaintiff in error, who was in court, and who, it was proved, was a justice of the peace of the county of Page, though not a member of the court, and was cognizant of all that was passing, enquired what price she would take for the slave. To which her agent replied that she would take eight hundred dollars. The defendant then said, I will give it. The agent replied, the negro, then, is yours. To which the plaintiff in error replied, well, I will take him.
Had this be.en all that passed between the parties, it is difficult to conceive how, by acts on words, they could have given a better definition or more appropriate illustration of a contract of an immediate sale. *113 And there is nothing in the subsequent history of the transaction which can, in my opinion, create any serious doubt as to the true intent and effect of understanding of the parties.
The certificate proceeds to state that the court then remanded the slave to jail, without passing sentence on him ; the defendant in error, by her agent and counsel, saying the negro was not to be remanded at her expense, and the plaintiff in error saying the negro was not to be remanded at his expense. A bill of sale was thereafter (evidently on the same day, as appears from facts subsequently stated,) prepared and executed by the defendant in error, with an order to pay the money, the price of the' slave, to her said agent Menefee, and delivered to Menefee, who applied to the plaintiff in error for payment, who replied, that he had not the money in his pocket, and would like to have some two weeks to pay it in. The agent replied, that he could not give that time ; that he should leave court ‘for the county of Rappahannock (where he lived) in a day or two, and if he would pay the money before he left, it would answer his purposes. To which the plaintiff in error replied, that he would borrow the m uey, and would pay it to him before he left: And with this understanding the parties separated.
Even if the remark by the plaintiff in error, that the slave was not to be remanded at his expense, imported, by necessary implication, an understanding on his part that the sale was not complete, and that the slave was not yet at his risk, it could not detract from the legal force of the plain and unambiguous contract already made. It was not competent for either of the parties, after having fully assented to the terms of the bargain, to construe away its obligations or fescape its consequences by acts done or declarations *114 made without the concurrence or assent of the other. -^nd as bas been seen, the defendant in error, so far making any concession in respect to the expenses fu£ure keepxng of the slave, was the first to protest against his being i-emanded at her expense. And that the plaintiff in error did not mean to insist on the payment by the defendant of the expenses of the further custody of the slave, as a condition precedent to the Vesting of the property and the payment of the price, is fairly to be inferred from his subsequent conduct. When applied to, to pay the price, he did not intimate any incompleteness in the bargain, or insist or suggest that any thing was yet to be done by the vendor to entitle him to demand the price, but asked and obtained a temporary postponement of payment, on the exclusive score of his own ease and accommodation. The control, too, exercised by the plaintiff in error over the slave, in obtaining, on his own motion, an order of the court to the jailor to have the slave confined in an apartment separate from that in which the other slave, the principal in the larceny, was still confined, and the further concern about his safe keeping, manifested in afterwards applying to the jailor to know whether there was any thing in the jail with which the slave could do violence to himself, though susceptible of the explanation that the plaintiff' regarded himself as having merely entered on a profitable treaty, which he hoped and expected to conclude, yet tend more strongly to the conviction that he regarded himself as having already acquired a title to the slave.
It is conceded in the argument of the plaintiff’s counsel, that if the defendant had delivered to the plaintiff an order on the jailor for the slave, then the title would have passed; but he contends that some such act, a delivery or tender of some symbol or evi *115 dence of ownership, was essential to the passing of the title: and he relies on certain passages from Bell and Story on Sales, to sustain the position.
These citations do not, I think, furnish authority applicable here. They show not what is the common law rule, but what is now the English rule, as modified by the 17th section of the 29 Charles 2, before mentioned. And as, in the absence of such statutory provision, an actual delivery of property in the possession of the vendor, and which can be presently delivered by him, is not essential, so neither is a constructive or symbolical delivery of property out of his immediate possession, in the keeping of a third person, essential, as between vendor and vendee, to the vesting of the property. The virtual or symbolical delivery is the substitute for the actual delivery, and is necessary to be resorted to only where a change of possession (if practicable) would be essential to the validity of the transfer; as in cases of gifts inter vivos or causa mortis, or in cases of sales, to render them, valid against the creditors of or subsequent purchasers from, the vendor.
Whether ordinarily, in the case of a sale of property in the hands of a third person, holding it under an agreement to restore the possession to the vendor at the termination of the bailment, it is necessary for the vendor, in order to maintain his action for the price, to prove that he had delivered or tendered to the vendee an order on the bailee for. the delivery of the property, or some other evidence of ownership, is a question which I do not deem it necessary to decide. For when the first application was made to the plaintiff to pay the price, he did not question the readiness of the defendant to perform any thing that by the terms of the contract she was to perform, but as we have seen, requested and obtained a postponement of the payment: And before the time for the payment arrived, the slave escaped. Thus, by his own act, as he could *116 not have expected to receive an order before he was rea(ty to pay the price, the delivery of the order (if was postponed to a period which had not arrivec[ before the happening of the event (the escape)which rendered an order on the jailor for the delivery of the slave wholly nugatory. Besides, the slave was not in the possession of the jailor, under any agreement with or authority from the vendor, but was in his custody under the order and warrant of the court. As soon as the purposes of the prosecution were satisfied, the slave would have been discharged from the custody of the jailor by the order of the court, and it would have been for the party entitled to the possession to attend and take the possession of the slave. The payment or tender of the purchase money was all that was needed, under the circumstances, to enable the vendee rightfully to obtain possession of the slave when the order for his discharge should be made. It is, however, to be observed further, that the contract was made publicly in open court, and it is fairly to be inferred, from the evidence, was within the knowledge of the jailor. And were it conceded that there was a duty resting on the jailor not merely to discharge the slave on the termination of the confinement under the prosecution; but to deliver him over to the rightful owner, I should still hold that nothing was wanting in the proof to enable the vendor to maintain his action. A receipt for the price of the slave would, under the circumstances of the case, have been fully equivalent to the most formal order from the vendor to the jailor to deliver the slave to the vendee. Menefee’s authority as agent was known to and recognized by Chapman, and his readiness to give a receipt for the price was obviously inferrible from the nature of the transaction and the demand of payment.
To the argument of an incompleteness of the sale which the counsel for the plaintiff in error founds on *117 tlie improbability that the vendor contemplated parting with his control over the possession of the slave before the price should be paid, it is only necessary to refer to the authorities already cited to see that though the buyer has a right to retain and control the possession until the price is paid or tendered, the contract of sale casts the right of property on the vendee, and subjects him to all risk of accident.
And as to the further argument derived from the absence of a tender by the vendor, of some written evidence of warranty of the soundness of the slave, it is sufficient to observe that the parties did not, in the contract, stipulate for any such warranty.
I think the judgment should be affirmed.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.