**Wytheville.**

Trigg Company and Others v. Bucyrus Company and

Others.

June 15, 1905.

Absent, Cardwell, J.

1. Sales—*Future Delivery*—*When Title Passes.*—When a contract is made for the purchase of an article hereafter to be delivered and paid for, as long as any act remains to be done by the vendor in order to put it in a state of readiness for delivery, the property does not pass to the buyer, but still remains at the risk of the seller.

2. Sales—*Articles to be Made*—*Case at Bar*—*Bailment.*—Under the contract in suit the seller agreed to make, deliver, and install machinery for a ship, for which the purchaser was to pay one-third cash upon delivery, one-third when the machinery was installed, and the residue when tested and received by the engineer of the government for whom the completed whole was intended. The purchaser agreed, upon request, to afford the facilities of its yards for the installation, to insure for the benefit of the seller as his interests might appear, and to indemnify him against loss or damage occasioned by certain specified causes, without his fault. The purchaser also agreed to make the payments above specified. The machinery was made and delivered according to contract, and the cash payment was made. The property of the buyer was then placed in the hands of a receiver in insolvency proceedings.

*Held:* This was a sale on time as to a part of the purchase price, and not a bailment, and, the machinery having been not only completed but actually delivered and paid for to the full extent demanded by the contract, title passed to the buyer.

3. Contracts—*Construction*—*Practical Construction by Parties*—*Case at Bar*—If the terms of a contract are ambiguous and its proper construction doubtful, the courts will adopt the practical construction, if any, placed upon it by the parties thereto. In the case at bar the practical construction placed on the contract in controversy was that of a sale and not a bailment; the seller having sworn to and had recorded a supply

lien claiming that the machinery mentioned in the contract constituted supplies furnished to the seller under said contract, and the buyer having listed it as a part of his property.

4. REGISTRY—*Contracts With Government—Reservation of Title—Conditional Sales.*—Contracts between the government of the United States and contractors by which it is stipulated that all parts of machinery paid for by the government under a specified system of partial payments shall become thereby the sole property of the United States do not come within the category of contracts which are required to be recorded by section 2462 of the Va. Code, 1904. No title is reserved in such contracts, and there is no element of a conditional sale about the transaction.

5. INTEREST—*Claims Against U. S. Government.*—In no case is interest allowed on claims against the government of the United States, unless the government has stipulated to pay interest, or it is given by express statutory provision.

Appeal from a decree of the Chancery Court of the city of Richmond in a suit in chancery instituted by creditors of the William R. Trigg Company, suing on behalf of themselves and all other creditors similarly situated, against the William R. Trigg Company and others. Into this suit the Bucyrus Company came by petition asserting a claim of title to certain property in the hands of the receiver and about to be turned over to the United States Government. Decree in favor of Bucyrus Company, The William R. Trigg Co., and a number of its creditors appealed.

*Reversed.*

The opinion states the case.

*J. J. Leake, Bickford & Stuart, Whitehurst & Hughes, A. W. Patterson, George Bryan* and *T. C. Gordon,* for appellants.

*Munford, Hunton, Williams & Anderson, Christian & Christian, Francis L. Smith, Coke & Pickrell* and *L. L. Lewis,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by certain supply lien creditors of the William R. Trigg Company, shipbuilders, suing on behalf of themselves and all other creditors similarly situated, alleging the insolvency of the defendant company and asking the appointment of a receiver to take charge of its assets and administer the same under the orders of the court. Thereupon numerous other supply liens were filed, among them one for $20,744.08 by the Bucyrus Company, of Milwaukee, Wisconsin.

At the time the bill was filed and the receiver appointed, the Trigg Company was engaged in the construction of a number of vessels for the United States, among them a certain sea-going suction dredge at a cost of $252.375.00. To be used in the construction of this vessel, the Bucyrus Company furnished the Trigg Company, under a contract in writing between the parties, certain pumping machinery, at a cost of $32,050.00. It is the rights of the parties growing out of this contract that are the subject of the present controversy between the receiver and the supply lien creditors of the Trigg Company, on the one hand, and the Bucyrus Company on the other, the latter claiming title to the pumping machinery in question, and therefore to the whole of its proceeds, which claim is vigorously controverted by the receiver and creditors of the Trigg Company.

In pursuance of the acts of Congress, in such cases made and provided, the United States Government filed its stipulation herein, claiming the unfinished vessel and all machinery on hand applicable to its construction, agreeing to protect the creditors of the Trigg Company in any claim they might have in or to the property which was superior to the rights of the government. Thereupon an order was entered, directing the receiver to surrender possession of the unfinished dredge and certain materials applicable thereto, including the pumping machinery in controversy, to the United States, or their authorized agents. Subsequently a balance of $14,266.67 was ascertained to be due from the United States on this pumping

machinery, and it is this sum, in the hands of the government, which is now the real subject of controversy, the decree appealed from having directed its payment to the Bucyrus Company.

The contract, which is dated September 16, 1901, provides that the Bucyrus Company shall construct and deliver the pumping machinery to the Trigg Company at Richmond, Virginia. It further provides that the Bucyrus Company shall at its own expense install the machinery in the hull of the dredge; the Trigg Company, if requested, to afford the facilities of its yards for such installation, and, if requested, to furnish men and material for that purpose at cost. The Trigg Company agreed to pay for furnishing and installing the machinery $32,050.00— one-third thereof when the pumping machinery was delivered at the works of the Trigg Company at Richmond, Virginia; one-third when such machinery was installed on board the dredge; and the balance on the completion of the government test, and after the machinery was found to be satisfactory to the government engineer. The Trigg Company agreed, at the delivery of the machinery and until it was accepted and paid for, to keep the same insured against fire and marine risk for the benefit of the Bucyrus Company as its interest might appear, and for the benefit of the United States as their interest should appear. It was further mutually understood that if, for any reason other than the fault of the Bucyrus Company, the dredge should not be ready to receive the machinery within ten months from the date of the contract, or if for any reason, other than the fault of the Bucyrus Company, it should not be installed as contemplated, or if, for any reason other than the fault of the Bucyrus Company, the completed dredge should not be delivered to or accepted by the government, the Trigg Company should save and hold harmless the Bucyrus Company from all loss and damage resulting therefrom. Section 65 of the specifications, which are made a part of the contract, provides that all parts paid for under the system of partial payments specified shall become thereby the sole prop-

erty of the United States, but that this provision shall not be interpreted as relieving the contractor (Trigg Co.) from the sole responsibility for the proper care and protection of said parts prior to the delivery of the dredge to the United States, or from any other of the provisions of the specifications; and that the contractor shall, at its own expense, properly store and care for the pumping machinery during the period, if any, between delivery and installation. The provisions of the contract to which we have adverted are alone relied on as throwing any light upon the present controversy.

In accordance with the obligations assumed by it, the Bucyrus Company manufactured and constructed the machinery in question, and prior to the appointment of the receiver shipped the completed article, consigned to the Trigg Company, and delivered it into the possession of that company at its yards in Richmond. Thereupon the Trigg Company promptly paid the vendor $10,683.33, one-third of the purchase price, as provided for by the contract.

In his brief, the learned counsel for the vendor concedes that, if the Bucyrus Company delivered this property to the Trigg Company as purchaser, the title and possession both passed with it. It is, however, contended that it was not delivered to the Trigg Company as purchaser, but as a mere bailee, and that therefore the title and possession both remained with the Bucyrus Company; the general rule relied on as controlling this case being that, when a contract is made for the purchase of an article hereafter to be delivered and paid for, so long as any act remains to be done by the vendor in order to put it in a state of readiness for delivery, the property does not pass to the buyer, but still remains at the risk of the seller. Citing *Dixon* v. *Myers,* 7 Gratt. 240; *Chapman* v. *Campbell,* 13 Gratt. 105; *Haxall* v. *Willis,* 15 Gratt. 434.

As bearing upon the same general subject, *Old Dominion S. S. Co.* v. *Burkhardt,* 31 Gratt. 664, may be very properly added to this list of cases. See also *In re Leeds,* 129 Fed. 922; *In re Martin Vernon Music Co.,* 132 Fed. 938.

The contention is that the delivery of the machinery to the Trigg Company was only for the purpose of enabling the vendor to carry out that provision of the contract which required it to install the machinery in the hull of the dredge; that for the purpose of being installed the vendee had to return or redeliver the machinery to the vendor; and that this remaining obligation to install the machinery brings the case within the rule mentioned. The provisions of the contract particularly relied on as tending to show that the title to and possession of this property never passed out of the Bucyrus Company, are, that the Trigg Company agreed to furnish the facilities of its yards for installing the machinery, and undertook to keep the same insured for the benefit of the Bucyrus Company as its interest might appear; and that the machinery was not to be paid for in full until the dredge was completed and accepted by the government.

We cannot concur in the construction of the contract insisted upon by the vendor. After full consideration of the agreement, the terms of which were reduced to writing by the parties in a carefully prepared paper, we have been unable to discover any element of a bailment in the transaction under consideration.

Story, in his work on Bailments, section 2, says: "A bailment is the delivery of a thing in trust for some special object or purpose, and upon a contract, express or implied, to conform to the object or purpose of the trust."

It would be difficult to bring the transaction before us within the terms of this definition. The transaction under consideration plainly involved the absolute sale of a chattel to be manufactured and delivered by the Bucyrus Company to the Trigg Company, at an agreed price; and when the article was completed and delivered, according to contract, the title thereto vested in the vendee, and the right to the purchase price vested in the vendor. The contract contains no reservation of title on its face, nor is there anything in its terms to indicate that

the title and possession were intended to be and remain in the vendor after the delivery of the completed machinery to the vendee at Richmond. The machinery was the thing bought and sold, under the contract, and when that was finished and delivered to the vendee and paid for to the extent required by the contract, nothing remained to be done to complete the sale and purchase of the article bargained for, or to vest the vendee with a more absolute title and possession than was then acquired. The vesting of the title in the vendee was not affected by the additional contract of the vendor, at some future time to install the machinery in the hull of the dredge, or by the agreement of the vendee to allow the vendor the facilities of its yards for that purpose. This seems quite clear from the contract, for by its sixth clause the obligation is imposed upon the vendee to save the vendor harmless from all loss or damage, whether the machinery is installed or not, provided the vendor is not responsible for the failure to install. This provision is certainly not in harmony with the idea that the vendee had no interest in the property until it was installed, and was merely holding it as trustee for the vendor.

Nor is the provision of the contract, that the vendee should keep the machinery insured for the benefit of the vendor, as its interest might appear, significant as showing that the title was not to vest in the vendee. This provision only showed that the vendor had an insurable interest in the property, but that circumstance in no way affected the title of the vendee. It is a very common business transaction, where the whole of the purchase money is not paid, to require the vendee to keep the property insured for the benefit of the vendor as his interest may appear.

One-third of the purchase price was paid by the vendee in cash, upon the delivery of the machinery, and the provision that the purchase money was not to be paid in full until the dredge was completed and accepted by the government could have no bearing upon the title of the vendee. To the extent that the

payment of the purchase money was postponed by the contract, it was a sale on time, and by the clause of the contract already adverted to, the vendor was protected against unreasonable delay in its payment by the obligation of the vendee to save it harmless although the dredge should never be completed.

Our view is, therefore, that the case at bar does not come within the influence of the rule invoked, for the article purchased was not only completed, with nothing remaining to be done to put it in a state of readiness for delivery, but it was actually delivered and paid for to the full extent demanded by the contract.

If the terms of the contract were ambiguous and its proper construction doubtful, it could be subjected to another test which is always entitled to great weight under such circumstances, and that is the construction which the parties have, by their acts, placed upon it. *King* v. *N. & W. R. R. Co.,* 99 Va. 625, 39 S. E. 701; *Glenn* v. *Perpetual B. & L. Co.,* 99 Va. 695, 40 S. E. 25. The result of this test shows that the view we have taken of the contract is fully sustained by the construction which the parties by their acts have placed upon it.

The vice-president and receiver of the insolvent vendee, who had been active in the management of its affairs and was well acquainted with its assets, when directed by the order of December, 1902, to take possession of all the property, real and personal, in the possession of the Trigg Company, or to which it was entitled, and to make an inventory of all such assets, took possession of the machinery in question and inventoried it as the property of the Trigg Company. No suggestion was made by him that the machinery was only a bailment and should be, therefore, turned over to the Bucyrus Company, from whom it came. Nor did the vendor then make any such claim. On the contrary, two weeks after the appointment of the receiver, it had recorded in the Chancery Court of the city of Richmond a supply lien, claiming that the machinery in question constituted supplies furnished by it to the Trigg Com-

pany, under the contract of September 16, 1901; that there was a balance of $20,744.08 still due and owing by its vendee on account of such supplies, and as security therefor claiming the lien provided by statute against all of the assets of the vendee. The truth of the facts set forth in this claim of lien was sworn to by the manager of the Bucyrus Company, who was one of its general officers. This act of the vendor is conclusive of its construction of the contract at the time and cannot be reconciled with its present pretension, made six months afterwards, that it had not parted with the title to or possession of the machinery, but that it was held by the Trigg Company as a mere bailee.

We have given careful consideration to the decisions of this court relied on to sustain the contention of the vendor. They discuss the general principles of law bearing upon this class of cases, though in each the facts are wholly different. So far as the principles there announced are applicable, they are certainly not opposed to the conclusion reached in this case, that the transaction here involved was an absolute sale, that the possession and title to the property sold vested in the vendee, and that the vendor has no claim thereto except as creditor in common with others who must suffer by the insolvency of the vendee.

The $14,266.67 now in the hands of the United States Government, the balance still due on this machinery, must be paid over to the receiver of the William R. Trigg Company, as part of the general assets of that concern, to be distributed under the orders of the court to those entitled thereto.

Under the contract between the United States and the Trigg Company, all parts of the machinery paid for by the government under specified system of partial payments became thereby the sole property of the United States, and as already pointed out this provision formed a part of the contract of the Trigg Company with the Bucyrus Company. The appellants contend that the title to the machinery did not vest to any ex-

tent in the United States as against the creditors of the Trigg Company; because the contract under which the government claims was not recorded as required by section 2462 of the Va. Code, 1904.

Without expressing any opinion upon the question whether or not the contracts of the United States come within the recording acts of Virginia, it is sufficient to say that this case does not come within the category of contracts which are required to be recorded by the section mentioned. No title was reserved in the contract, and there is no element of a conditional sale about the transaction.

It is further contended by the appellants that the United States should be required to pay interest on the balance ascertained to be due by it on account of the machinery in question.

It is well settled by the decisions of the Supreme Court that in no case is interest allowable on claims against the government unless the government has stipulated to pay interest, or it is given by express statutory provision. *Tillson* v. *United States,* 100 U. S. 43, 25 L. E. 543; *Angarica* v. *Bayard,* 127 U. S. 251, 8 Sup Ct. 1156, 32 L. Ed. 159. In the case last cited, after stating the facts, the court says: "The case, therefore, falls within the well settled principle that the United States are not liable to pay interest on claims against them, in the absence of express statutory provision to that effect. It has been established, as a general rule in the practice of the government, that interest is not allowed on claims against it, whether such claims originate in contract or tort, and whether they arise in the ordinary business of administration or under private acts of relief passed by Congress on special application. The only recognized exceptions are, where the government stipulates to pay interest, and where interest is given expressly by an act of Congress, either by the name of interest or by that of damages.".

In the case at bar, neither the stipulation filed by the learned counsel for the government, nor the act of Congress under which

the stipulation was filed, contains any recognition of a liability on the part of the government to pay interest. It is true the stipulation declares that its object is to secure to any and all claimants the fullest possible protection and security in and to their respective rights and claims. The fullest security possible was that given by sections 3753 and 3754 of the revised statutes of the United States, under which the stipulation was filed. The intention and effect of the stipulation was to conform to the act of Congress, and if it had contained any provisions not authorized by the act of Congress such additional provisions would have been without legal effect. It follows, from the authorities cited, that the fund held by the United States Government, awaiting the determination of its rightful owner, does not bear interest against the government.

The decree appealed from, of July, 1904, after directing the payment to the Bucyrus Company of the balance of $14,266.-67 in the hands of the government, provides that upon its payment the title of the Bucyrus Company in the pumping machinery shall vest in the United States. Counsel for the government calls attention to the fact that upon the surrender of the property in question, under the stipulation which was filed, the title vested by operation of law in the United States, and that the provision of the decree, that it should vest when the money was paid to the Bucyrus Company, was, therefore, error, and asks that the decree be corrected in that respect.

The point is well taken; but, as we have held that the Bucyrus Company has no title to the property, the error is harmless. The error can, however, be avoided in the decree to be hereafter entered.

For these reasons, the decrees appealed from must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*