In the Matter of SMITHDALE INDUSTRIES, INC., Bankrupt.
No. 6595.

United States District Court
E. D. Tennessee,
Northeastern Division.
April 13, 1963.

Walter Curtis, Greeneville, Tenn., for the bankrupt.

Simmonds, Bowman & Herndon, Johnson City, Tenn., for Baker-Built Feeders.

Bryant, Brandt & Price, Johnson City, Tenn., for Limestone Farms.

NEESE, District Judge.

■ This is a review of the findings and orders of a referee in bankruptcy regarding the reclamation of 32 cattle-feeding devices from Limestone Farms, Inc., purchaser of the bankrupt's assets, by the petitioner Baker Built Feeders which sold the devices to the bankrupt before this proceeding was instituted. The pertinent records, findings and or-

ders of the referee were properly certified by him on the petition for this review. This Court is authorized now to confirm, modify or reverse such findings and orders. 11 U.S.C. § 11, sub. a(10).

The Court adopts as its own the findings of fact of the referee in bankruptcy herein. (For easy reference the first four pages of the referee's findings will be appended hereto.)

The only salient questions involved relate to the interpretation of the contract of the parties and the Tennessee statutes which are applicable under the facts.

■■ The Court finds, as did the referee, that the seller, Baker Built Feeders, and the purchaser, Smithdale Industries, Inc., intended to enter into an oral contract of sale whereby Baker would sell Smithdale 32 cattle-feeders for cash on delivery. The Court, therefore, concludes that the Tennessee Conditional Sales Act [T.C.A. §§ 47–1301 et seq.] is inapplicable. Transactions on cash bases normally require no legal liens. Cumberland Portland Cement Co. v. Reconstruction F. Co., D.C.Tenn. (1953), 140 F. Supp. 739, 753. The question here is not one of legal lien, but one of transference of title under the Uniform Sales Act [T.C.A. §§ 47–1201 et seq.] If title ever passed to Smithdale, then the cattle-feeders belong by purchase from the trustee in bankruptcy to Limestone Farms, Inc.; if, on the other hand, title never passed to Smithdale, the feeders are subject to reclamation from Limestone Farms, Inc., by the petitioner Baker Built Feeders.

■ At the time of the making of the sales agreement by Smithdale and Baker, the cattle-feeders constituted unascertained goods, title to which was not transferred to Smithdale until the goods were ascertained. T.C.A. § 47–1217.

■ The agreement between these parties was an entire contract. It was not divisible so as to render each cattle-feeder assembled on Smithdale's premises in Tennessee, following prefabrication in, and shipment from, Texas, a separate sales transaction. It is undisputed that the seller intended that all 32 feeders be sold in one transaction, and it is likewise uncontradicted that the buyer's president understood that all 32 feeders were being purchased in one transaction. This, then, was a whole contract. Ross-Meehan Foundry Co. v. Royer Wheel Co. (1904), 113 Tenn. 370, 83 S.W. 167, 68 L.R.A. 829.

■ The moment the last of the 32 feeders was assembled and made ready for immediate use on Smithdale's premises, all the goods were thereupon ascertained, and T.C.A. § 47–1218 became operable. Title to the feeders, in that event, would have passed from the seller to the buyer when they intended for it to pass. In ascertaining this intention, T.C.A. § 47–1218 provides for resort to the terms of the contract, the conduct of the parties, and * * * the circumstances of the case.

■ The selling and buying parties both having interpreted their agreement to be on the basis of payment by cash on delivery, the Court will give their agreement the interpretation they gave it, based on their acts and declarations. Womble v. Walker (1944), 181 Tenn. 246, 251–252, 181 S.W.2d 5. No title vested in Smithdale until it complied with the terms of the cash sale, and any delivery the seller made to Smithdale was conditioned on cash payment of the purchase price. Dillard & Coffin Co. v. Beley Cotton Co. (1923), 150 Tenn. 195, 200, 263 S.W. 87, 88, quoted approvingly in Edwards v. Central Motor Co. (1954), 198 Tenn. 50, 53, 277 S.W.2d 417. The fact that the delivery and payment were not exactly simultaneous does not affect the nature of the transaction where the parties intended to accomplish a cash sale. Engstrom v. Wiley, C.A.9th (1951), 191 F.2d 684.

■ Neither did the seller's leaving of the feeders on Smithdale's premises without payment convert this cash sale into a credit transaction. Several times Smithdale's president reassured the seller's personnel that payment of the purchase price would be forthcoming mo-

mentarily. This being a cash transaction, the fact that Smithdale, for its own convenience, delayed remittance for a few days does not change the legal effect of the sale. Cumberland Portland Cement Co. v. Reconstruction F. Co., supra, 140 F.Supp. at page 752.

Limestone Farms, Inc., insists that, assuming the Uniform Sales Act, supra, is applicable, then T.C.A. § 47–1219, Rule 4(1), of that Act applies in this situation. The Court disagrees.

T.C.A. § 47–1219, Rule 4 (1), is a rule of construction always limited in its application by the first statement contained in the language of the section cited. In other words, where, as here, a contrary intention of the parties appears, no rule of construction following anywhere in T.C.A. § 47–1219 applies, and the contrary intention of the parties only is to be considered. State ex rel. Day Pulverizer Co. v. Fitts (1933), 166 Tenn. 156, 60 S.W.2d 167.

Because of the foregoing findings and conclusions the findings and orders of the referee will be confirmed. Within ten (10) days from the filing of this memorandum, counsel for Baker Built Feeders will submit, agreeably with the local rules of this court, an order to that effect.

## APPENDIX

FROM EXCERPTS MEMORANDUM OPINION AND ORDER OF REFEREE IN BANKRUPTCY ON RECLAMATION PETITION FILED BY BAKER-BUILT FEEDERS

This matter is before the court on the reclamation petition, as amended, of Joe Baker and wife, Maude Baker, d/b/a Baker-Built Feeders, Rhome, Texas, to recover from the trustee in bankruptcy, or his successor, 34 livestock feeders. The facts are as follows.

In July, 1961, an individual by the name of Bill Wright contacted Mr. Joe Baker and ordered two livestock feeders to be delivered to Smithdale Industries, Inc. (Smithdale), at Limestone, Tennessee. Bill Wright was not an employee of Baker or of Smithdale; he was an employee of National Auction of Ft. Worth, Texas, and a mutual acquaintance of Mr. Baker and Mr. Bill Smith, president of Smithdale.

The two feeders ordered by Mr. Wright were fabricated by Baker and delivered to Smithdale. The invoice is dated July 5, 1961, in the amount of $900.00 (Ex. 1, Deposition of Joe Baker). No payment was made to Baker when the two feeders were delivered; nor has any payment been made since that time.

There was no contact or communication between Mr. Baker and Mr. Smith, or any other officer or agent of Smithdale, regarding the sale of the two feeders.

Subsequent to the delivery of the two feeders, about August 2, 1961, Mr. Bill Smith called Mr. Baker on the telephone and told him he was interested in buying some more feeders. Mr. Baker and Mr. Smith talked about the size and the price and agreed that Baker would fabricate and build 24—12x16 feeders and 8—12x 20 feeders and deliver them to Smithdale at Limestone, Tennessee, at the rate of six each week.

Mr. Baker testified that Mr. Smith agreed during the telephone conversation to pay for the feeders "on delivery".

Shortly after the telephone conversation, Mr. Baker determined that he could not fabricate and assemble the feeders in Texas at the rate of six each week. He thereupon called Mr. Smith and asked him if the feeders could be assembled at Limestone, Tennessee. Mr. Smith advised him that he had plenty of space that could be used for that purpose.

Pursuant to the agreement between Mr. Baker and Mr. Smith, the 32 feeders were fabricated at Rhome, Texas, partially assembled there, loaded eight at a time on a truck, and hauled to Smithdale premises at Limestone where they were finally assembled. Two of Baker's employees, Mr. H. D. Russell and Mr. Cletus Giles, went to Limestone and did the final assembly work on the feeders.

When the assembly work was nearing completion, on October 4, 1961, Mr. Baker's men called him and told him that they would finish up the next day. Mr. Baker caught a plane and went to Limestone to make a final inspection of the feeders and to "settle" with Mr. Smith. Prior to leaving Texas, Mr. Baker called Mr. Smith on the telephone and told him he would be in Limestone on the following day; Mr. Smith replied that he was looking forward to seeing him.

Mr. Baker arrived at Limestone on October 5, 1961, about 1:00 in the afternoon. At the main office of Smithdale he was advised that Mr. Smith had gone to New York. Mr. Baker went out to the yard where his men were working and had a "normal session" with them, then went to the truck terminal where he picked up some invoices for gasoline for which he owed Smithdale, returned to the main office, paid the gasoline invoices amounting to $134.00, and inquired if there was anyone there who could give him a check for the feeders. When advised there was not, he asked when Mr. Smith would be back and was told "possibly tomorrow evening".

Mr. Baker thereupon went back to the yard where his men were working and gave Mr. Russell the final invoices for the 32 feeders along with a statement that included the two feeders that had been delivered to Smithdale in July. (Ex. 4, Deposition of Joe Baker). Mr. Baker told Mr. Russell to "stay there" until he got the money. Mr. Baker left the Smithdale premises about 5:00 p. m. and returned to Texas.

Mr. Russell stayed in Limestone until Saturday evening, October 7, 1961. Prior to leaving Limestone he went to Smithdale's office and asked to see Mr. Bill Smith. Upon being advised that Mr. Smith was busy, he went to another office on the premises and talked to Mr. Jimmy Smith, an officer of Smithdale and a brother of Mr. Bill Smith. Mr. Jimmy Smith asked Mr. Russell if he wanted to pick up the check for the feeders and was told that he did. Mr. Smith told him he was going to mail it. Mr.

Russell gave Mr. Smith the bill and invoices and returned to Texas.

On the following Monday, October 9, 1961, Mr. Russell reported to Mr. Baker that he and Mr. Giles had stayed at Smithdale until they exhausted their means of collection, to the extent that they (Smithdale) promised to mail a check.

On October 16th, Mr. Baker called Mr. Smith on the telephone regarding payment for the feeders. Mr. Smith told him that he had been busy but that he would put a check in the mail by Wednesday (October 18th).

On October 19th or 20th, Mr. Bill Wright (who in July had placed the original order for the two feeders), and a Mr. Peterson, went to Mr. Baker's office and asked him if he had received his money from Smithdale. When advised that he had not, they told him it was in the air that Smithdale was trying to go into bankruptcy.

On October 27, 1961, Mr. Baker's attorney in Texas called the law firm of Simmonds, Bowman, and Herndon in Johnson City, and requested that they take action to get the feeders or the money. Mr. Herndon of that firm was unable to contact Mr. Smith until October 29th. Mr. Smith told Mr. Herndon that the Baker sale was a "cash transaction", that the feeders belonged to Baker, and that he would see that Baker either got the feeders or the money. Mr. Smith informed Mr. Herndon, however, that a general creditors' bill had been filed against Smithdale but that he was trying to get it withdrawn.

A general creditors' bill against Smithdale was filed on October 26, 1961 in the Chancery Court at Jonesboro, Tennessee. The bill was thereafter sustained by the Chancellor and receivers appointed. Mr. Baker on ——————— filed a reclamation petition in the Chancery cause seeking to recover the feeders. No answer to that petition was filed by the receivers.

On February 26, 1962, an involuntary petition in bankruptcy was filed against

Smithdale, and on February 27, 1962 an adjudication entered.

Baker insists that his reclamation petition should be granted (1) because the transaction was a cash sale, and title to the feeders did not pass to Smithdale, and (2) because possession of the feeders was obtained by fraud of the buyer and therefore no bona fide possession resulted.

The trustee insists that the reclamation petition should be denied because (1) title to the feeders was not retained by Baker, and (2) title to the feeders passed when same was delivered to Smithdale.

The trustee argues that he is a lien creditor under the provisions of Section 70, sub. c of the Bankruptcy Act, and that his lien is superior to the rights of Baker.

It is conceded by the parties that this controversy is controlled by Tennessee law.