**In the Matter of HELMS VENEER COR-PORATION, Debtor in Possession.**
**No. 68–BK–199–R.**

United States District Court
W. D. Virginia,
Roanoke Division.
July 19, 1968.

Eggleston, Holton, Butler & Glenn, Roanoke, Va., for Helms Veneer Corp.

Norman A. Scher, Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for James Talcott, Inc.

Hutcherson, Greer, Rhodes & Sutherland, Rocky Mount, Va., for Valley Log Co.

John F. Brown, Jr., Elkins, W. Va., for Van's Wood Products.

J. T. Engleby, Jr., Referee in Bankruptcy, Roanoke, Va.

In Proceedings for an Arrangement under Chapter XI

DALTON, Chief Judge.

This matter is before the court on the separate petitions of Helms Veneer Corporation, debtor in possession, and James Talcott, Inc., holder of a security lien on the debtor corporation's inventory, for review of the order of the referee in Bankruptcy ordering the claims of certain creditors, hereinafter set forth, paid in full as priority claims by the debtor corporation.

The facts are these. On March 28, 1968, the Helms Veneer Corporation (hereinafter debtor) filed its petition under Chapter XI of the Bankruptcy Act alleging insolvency and asserting its

intention to propose an arrangement pursuant to the provisions of said Act. Subsequent thereto the debtor was continued in possession under certain conditions, an arrangement was filed, a meeting of the creditors was held, a Creditor's Committee was elected, the arrangement was confirmed and is now in the process of being carried out, and the debtor is continuing in business.

A hearing was held on the claims of certain log sellers who sought to reclaim logs transferred to the debtor, or the value thereof. The petitioners seek review of the three specific orders of the referee in allowing the claims of McKinney and McKinney, Inc., Valley Log Company and Van Wood's Products, Inc. as priority claims to be paid in full by the debtor.

James Talcott, Inc., held a substantial valid security lien on all inventory of the debtor, including merchandise then owned and thereafter acquired, which lien is apparently proper and recorded.

The petition for review filed by Helms Veneer Corporation states that the referee erred in respect to his interpretation and application of the Virginia Uniform Commercial Code, § 2–702, as applied to the facts of this case. The petition does not state what error was committed, nor does it ask for any specific relief. By statute, the petition is required to "set forth the order complained of and the alleged errors in respect thereto". Bankruptcy Act, § 39(c), 8 Remington on Bankruptcy, 6th Ed. § 3409 (1955). A petition that merely alleges error in general terms is insufficient. In re Moskowitz, 63 F. Supp. 1000 (W.D.Ky.1946) and the court should not be compelled to search the records for error. In re Musgrave, 27 F.Supp. 341 (N.D.W.Va.1939). "It is not contemplated by the Bankruptcy Act that the court shall search through many pages of briefs to discover the issue or question sought to be raised and presented by the petition for review". In re Ainsworth, 5 F.Supp. 523, 526 (S. D.Tex.1933). The petition before this court does not indicate what the referee's error was in respect to state law, nor is there an indication as to what the petitioner thinks the law is in respect to the facts of this case. The petition, for the reasons cited, is insufficient to allow review and therefore is ordered dismissed.

The petition of James Talcott, Inc. assigns as error the referee's failure to find that the testimony at the reclamation hearing clearly revealed credit transactions, rather than cash sales, and as such are covered by § 2–702 of the Virginia Commercial Code. The petitioners claim that under the above statute their rights are superior to those of the reclamation claimants.

We address ourselves to the first claim of petitioner, namely that the transactions between the reclamation claimants (hereinafter claimants) and the debtor were credit transactions. Since the transactions involving McKinney and McKinney, Inc., and The Valley Log Company are similar, they will be considered together. The record shows that in both transactions logs were released to the debtor without receiving a check, contrary to the usual custom. Although repeated demands were made, neither party received any evidence of payment from the debtor. Mr. Wagner, of Valley Log Company, testified that he released logs to the debtor upon the promise of a check in a few days. Demands for payment over a period covering several months did not produce a payment or any evidence thereof. Mr. McKinney, of McKinney and McKinney, Inc., testified that he was not present when the logs were taken by the debtor, but that he would not have released the logs without receiving a check, had he been present. He further testified that he demanded a check and received a promise that he would receive the check in a few days. Over 15 days passed before Mr. McKinney demanded his logs be returned to him. Upon demand for return, the debtor informed him that the logs belonged under a lien to James Talcott, Inc. According

to the testimony, Mr. McKinney then communicated with James Talcott, Inc. and received a promise that payment would be forthcoming within three weeks.

This court believes that the transactions involving the claims of McKinney and McKinney, Inc. and The Valley Log Company constituted credit transactions. An extension of credit no matter how brief establishes an antecedent debt under the Bankruptcy Act. Sandoz v. Knippers, 241 F.Supp. 640 (W.D.La.1965); Bankruptcy Act, § 60, 11 U.S.C.A. § 96; Engelkes v. Farmers Co-operative Co., 194 F.Supp. 319 (N.D. Iowa 1961). A cash sale, in law, is not necessarily a conditional or an unconditional sale. Although the delivery and payment are usually thought of as being concurrent, absolute simultaneity is not requisite, if the title is not meant to pass until the payment is actually made, 5A Remington on Bankruptcy, 5th Ed., § 2487 (1953); In re Smithdale Industries, Inc., 219 F.Supp. 862 (E.D.Tenn. 1963), even though bankruptcy proceedings intervene. In the Matter of Mort Co., 208 F.Supp. 309 (E.D.Pa.1962). However, by the claimants' own testimony, the logs were either voluntarily released or allowed to remain in the possession of the debtor upon receiving promises of payment in the future. There does not have to be a willing extension of credit to create an antecedent debt which would, if paid, create a voidable preference under the provisions of the Bankruptcy Act. Engelkes v. Farmers Co-operative Co., 194 F.Supp. 319 (N.D.Iowa 1961). "Delay in making a promised payment, transfer of property, or the giving of security, in connection with a transaction which was intended by the parties to be current and upon present consideration, may result in ultimate performance being regarded as with respect to past credit and on account of antecedent indebtedness." 4 Remington on Bankruptcy § 1661.2 (1957) Engelkes v. Farmers Co-operative Co., 194 F.Supp. 319, 324 (N.D.Iowa 1961). The testimony by Mr. Butler, of Valley Log Co., clearly shows that he released his logs on a promise of payment in the future. Mr. McKinney, of McKinney and McKinney, Inc., testified "We kept asking for a check to be sent to us and they promised it would be sent on the 10th." The United States Supreme Court, in National City Bank v. Hotchkiss, 231 U.S. 50, at 58, 34 S.Ct. 20, at 21, 58 L.Ed. 115 (1913), in holding that a bank who had loaned money at 10 o'clock in the morning and received payment of the loan at 3 o'clock, the borrowers entering bankruptcy at 4 o'clock the same day, had received an illegal preference, said, "The consent to become a general creditor for an hour, that was imported, even if not intended to have that effect, by the liberty allowed to the firm, broke the continuity and established the loan as part of the assets."

The claimant's right to reclaim goods sold on credit to an insolvent buyer, as here presented, is governed by § 2–702 of the Virginia Uniform Commercial Code.[1] We do not agree with the ref-

1. 1950 Va.Code Ann. (1965 Added Vol.) § 8.2–702. Seller's remedies on discovery of buyer's insolvency.

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this title (§ 8.2–705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this title. (§ 8.2–403). Successful reclamation of goods excludes all other remedies with respect to them. (1964, c. 219.)

eree that, except for bankruptcy, these particular claimant-sellers could have reclaimed the logs. The seller's right to reclaim goods sold on credit to an insolvent buyer is limited by the second provision of § 2–702, of the Uniform Commercial Code, "Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt  *  *  *." The Official Comment states that the discovery of the buyer's insolvency and demand within a ten day period of receipt are conditions of the right to reclaim the goods. In Virginia prior to the adoption of the Uniform Commercial Code, a seller was not able to recover a chattel from an insolvent buyer, ownership having passed to a third party, the insolvency having occurred much more than ten days after delivery of the goods. Trigg Co. v. Bucyrus Co., 104 Va. 79, 81–88, 51 S.E. 174 (1905). The Virginia Comment to § 8.2–702 of the 1950 Va.Code Ann. (1965 Added Vol.) states that the result in Virginia would now be the same under the Uniform Commercial Code. The testimony is clear that no demand was made for a return of the goods within a ten day period of their delivery, but rather that demands were made for payment. The record does not reveal any evidence of the buyer's insolvency at the time of the receipt of the goods or within a ten day period thereafter. Because the record does not disclose even the minimum conditions required in order for credit sellers to reclaim the goods, but rather the contrary, the claims cannot stand as priority claims. It is, therefore, ordered that the specific orders of the referee allowing the claims of McKinney and McKinney, Inc. and Valley Log Co. as priority claims be reversed.

The claim involving Van's Wood Products, Inc. is different. Mr. VanDevender, of Van's Wood Products, Inc., testified that he released three loads of logs on February 27, 1968 worth $5,084 to the debtor in return for a check in 'he amount of $4,000 and a promise of future payment of the remaining $1,084. The check was timely presented to the bank for payment and subsequently returned because of insufficient funds. Sometime after March 12, 1968 with the assurance of debtor's agent that funds were available, the check was again submitted to the bank and again returned for the same reason. The claimant then demanded the return of his goods.

The referee ordered that the Van's Wood Products, Inc. receive $4,000 as a priority claim with the remaining amount to be treated as a general claim.

Petitioner contends that the acceptance of a check in less than the full amount constituted a part payment on an open account. We do not agree. The acceptance of a check does not change a cash sale into a credit transaction. If the intention of the parties was to accomplish a cash transaction, which is the custom of the trade, then an acceptance of a check in place of actual cash does not change the transaction. Engstrom v. Wiley, 191 F.2d 684 (9th Cir. 1951). The Uniform Commercial Code recognizes payment by check as a commercially normal and proper method of payment. Uniform Commercial Code § 2–511; 1950 Va.Code Ann. § 8.2–511 (1965 Added Vol.) The record before this court reveals nothing, except for a statement by petitioner's lawyer in the cross-examination, to indicate that the parties meant to deviate from the normal cash basis that is the custom of the trade. The customs and habits, plus the intention of the parties are governing factors in determining whether there has been a cash transaction. Engstrom v. Wiley, 191 F.2d 684 (9th Cir. 1951). We find no convincing evidence that the parties ever intended anything but a cash transaction. Petitioner offered no affirmative evidence either by testimony or documents to show otherwise. We therefore adopt the referee's findings and the inferences therefrom as being substantiated by the record and not clearly erroneous within the meaning of General Order 47, 11 U.S.C.A. following

§ 53. In re Woody, 248 F.Supp. 855 (W.D.Mo.1966).

Accepting the referee's finding of a cash sale, we perceive another problem that must be answered. What are the rights of a seller in a cash transaction, upon the dishonor of a check taken as payment for goods delivered to the buyer? The court, in In the Matter of Mort Co., 208 F.Supp. 309 (E.D.Pa. 1962) was confronted with this problem. The facts of that case were that a seller had delivered goods to the buyer and received simultaneously a check as payment. Past transactions between the parties had been on a C.O.D. basis. The check was immediately deposited by the seller, but was never paid because the buyer had filed for bankruptcy three days after receipt of the goods. The facts state that there was enough money on deposit to have paid the check. The seller within a ten day period filed a petition for reclamation for money received by the trustee in bankruptcy for the goods delivered and sold pursuant to an agreement between the parties. The court, in allowing the seller to prevail over the trustee in bankruptcy, interpreted Sections 2–507(2) and 2–511 of the Uniform Commercial Code (hereafter U.C.C.), which sections correspond to the same numerical sections in the Virginia U.C.C.[2] In interpreting § 2–507(2), the court determined that the seller in a cash transaction, who accepted a check which the bank refused to pay because of the intervening of bankruptcy proceedings, had the right to reclaim the goods sold and that nothing in the Bankruptcy Act changed this. The court further stated, "* * * if the seller has a right to reclaim the goods he stands in a position superior to any creditor." In the Matter of Mort Co., supra, at 310. Noting that the Official Comment to § 2–511 recognized the acceptance of a check as a commercially normal and proper method of payment, the court said:

> The check was not postdated. Moreover the buyer was seemingly solvent as far as this sale was concerned since there was enough money in the bank to cover the check. A businessman in financial difficulty must be able to carry on cash transactions or go out of business altogether. Unless we are to return to primitive commercial methods, such a businessman should be able to use a check for payment. This is certainly the proper rule when the check is not postdated and when, if the payee presents the check immediately to the bank on which it was drawn, he will be paid. In the Matter of Mort Co., supra, at 311.

In the present case we note two factors which we think distinguishes it from the Mort case, supra. First, the check received in payment for a cash transaction was dishonored twice, not because bankruptcy intervened, but be-

2. 1950 Va.Code Ann. (1965 Added Vol.) § 8.2–507. Effect of seller's tender; delivery on condition.

(1) Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract.

(2) Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due. (1964, c. 219).

§ 8.2–511. Tender of payment by buyer; payment by check.

(1) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery.

(2) Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

(3) Subject to the provisions of this act on the effect of an instrument on an obligation (§ 8.3–802), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment. (1964, c. 219.)

cause the debtor had insufficient funds on deposit to cover the check. Secondly, and more important, the time period involved in the present case, as revealed by the testimony of the claimant, covered a period in excess of ten days before demand was made for return of the goods. We agree with the reasoning in the *Mort* case, supra, that § 2–507 gives the seller a right to reclaim his goods where a check, subsequently dishonored, has been accepted for payment in a cash transaction. However the right to reclaim is limited. The Official Comment to § 2–507 of the U.C.C. reads:

> 3. Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's "right as against the seller" conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona-fide purchase sections of this article. Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. The provision of this article for a ten day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here.

The Official Comment to § 2–511(3) reads:

> 6. Where the instrument offered by the buyer is not a payment but a credit instrument such as a note or a check postdated by even one day, the seller's acceptance of the instrument insofar as third parties are concerned, amounts to a delivery on credit and his remedies are set forth in the section on buyer's insolvency. As between the buyer and the seller, however, the matter turns on the present subsection and the section on conditional delivery and subsequent dishonor of the instrument gives the seller rights on it as well as for breach of the contract for sale.

We interpret § 2–507 and § 2–511 of the Virginia U.C.C. as giving the seller a right to reclaim his goods from the buyer where a cash transaction has occurred, and a check, taken in payment by the seller, was dishonored. However, the right to reclaim is limited to a ten day period from the delivery of the goods as provided by § 2–507 by virtue of its cross reference to § 2–702. If the right to reclaim has not been exercised within that specified time period, the right is waived. The seller's remedy is then on the instrument as well as for breach of contract. This, as we interpret it, reduces the seller's rights to those of a general creditor. It is clear from the testimony of Mr. VanDevender that a period in excess of ten days had passed before he demanded return of the logs. Therefore, we are constrained to hold that any rights that were annexed to the original cash transaction have been reduced to those of a general creditor by the provisions of the above cited statutes. We, therefore, reverse the order of the referee allowing the claim of Van's Wood Products, Inc. as a priority claim to be paid in full.