**In the Matter of COLACCI'S OF AMERICA, INC.**

**BAR CONTROL OF COLORADO, Appellant,**

v.

**Roger C. GIFFORD, Appellee.**

No. 73-1581.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 16, 1973.

Decided Jan. 18, 1974.

George J. Francis, Denver, Colo., for appellant.

M. Bernard Sobol, Denver, Colo., for appellee.

Before PICKETT, SETH and DOYLE, Circuit Judges.

SETH, Circuit Judge.

Bar Control of Colorado, the appellant, is in the business of selling bar equipment. It had sold such equipment to a firm which was later adjudicated a bankrupt, and "repossessed" it within four months of the adjudication. The appeal is from an order of the United States District Court affirming an order of the referee in bankruptcy which required Bar Control to pay to the bankrupt estate the value of the bar equipment which it "repossessed."

The record shows that Bar Control arranged to sell the equipment for installation in a restaurant owned and operated by Colacci's known as "Tony Colacci's." After being told by Bar Control's president, Mr. Ray O'Neal, of the various ways in which payment could be made, Mr. Leo W. Kennedy, acting on behalf of Colacci's, agreed to a cash sale with payment to be made upon delivery and installation of the equipment. There appears to have been no inquiry at or prior to the sale as to the buyer's solvency, and no representations made by the buyer. The equipment was delivered, and the installation by Bar Control took about two days, being completed on November 8, 1969. Mr. O'Neal then asked Mr. Kennedy of Colacci's for payment, using the following words: "Okay, all we need is a check. I will mark the invoice paid and the equipment is yours." Mr. Kennedy responded that Colacci's was overextended and did not have the funds with which to pay for the equip-

ment. Mr. O'Neal remonstrated that he had to have payment, and if not, then the equipment. Mr. Kennedy answered that Colacci's would have the money "in a couple of days." Mr. O'Neal returned "in a couple of days," and was again told that Colacci's did not have the money. Apparently, Mr. O'Neal's visits over the following months to Colacci's were numerous, but all without success in obtaining payment. The equipment remained in use at Tony Colacci's throughout this period.

Colacci's financial difficulties became apparent, and a committee of creditors was formed. Mr. O'Neal, the representative of Bar Control who had negotiated the sale of the equipment, was on the committee and attended meetings thereof on February 24 and on March 8, 1970. On March 18, 1970, Mr. O'Neal ordered the employees of Bar Control to remove the greater part of the equipment which Bar Control had installed at Tony Colacci's. This was done about 6:30 a. m. while only two cooks were present on the Colacci's premises. Colacci's was then insolvent under any test.

The referee held that under the Uniform Commercial Code, Colo.Rev.Stat. 1963, Vol. 7A, §§ 155–1–101 to 155–11–102 (1965), and more particularly Article 2 thereof, §§ 155–2–101 to 155–2–725 (1965): (1) title to the equipment passed to Colacci's when it was installed, section 2–401(1)(2); (2) when payment was not made and Mr. O'Neal allowed the equipment to remain on the premises of Tony Colacci's to be used daily for four months, this amounted to tacit consent to its retention by Colacci's; (3) in the event the sale could be construed as a credit transaction, Bar Control did not claim the equipment within ten days after Colacci's had received it, assuming that Colacci's was insolvent at that time, and could not reclaim it under section 2–702(2); and (4) Bar Control never cancelled the contract by reason of nonpayment, at least until the equipment was "repossessed" some four months later, so that the provisions of section 2–703 would also not apply to aid Bar Control.

The referee thus concluded that the repossession of the equipment by Bar Control was a voidable transfer under sections 1(30) and 60 of the Bankruptcy Act, 11 U.S.C. §§ 1(30), 96, and ordered Bar Control to pay to the trustee the value of the equipment wrongfully retaken. The district court, on petition for review, affirmed the referee's order.

It is apparent that the transaction was negotiated as a cash sale with payment due on delivery, which included installation. Section 2–507(2) of the Uniform Commercial Code in Colorado provides in part:

"Where payment is due and demanded on the delivery to the buyer of goods . . ., his right as against the seller to retain . . . them is conditional upon his making the payment due."

The Official Comment to the UCC section states:

"Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. The provision of this Article for a ten-day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here."

The Code provision is expressed in terms of the conditional right of the *buyer* to "retain" the goods delivered on a *cash* sale. The Official Comment, however, refers to "waiver" of the "condition" by the seller, thus again referring to the right to "retain." We take this to mean possession and the right to possession. The record here shows that the seller did nothing while the sale was a cash sale to "follow up" his rights. Thus there was a waiver by inaction relative to retention as the Comment contemplates. This inaction, as we have indicated, continued for several months, and extended into the period when the sale had become a credit sale.

The Official Comment quoted above refers to a reclaiming seller, and states, as we understand it, that if the credit seller does not follow up on his rights as to possession, there is a waiver. The code provisions relating to a reclaiming seller contemplate, of course, a sale on credit. The sale here concerned became such a sale. Bar Control here urges that it is such a reclaiming seller entitled to the equipment as against the trustee.

The relative rights of a reclaiming seller and a trustee in bankruptcy have generated considerable controversy among UCC commentators. We find, however, that the facts of this case make it unnecessary to decide such an issue. Section 2–702 of the Code identifies the rights of a reclaiming seller as follows: "Where the seller discovers that the buyer has received goods on credit while insolvent, he may reclaim the goods upon demand made within ten days after the receipt, . . . ." The transaction under consideration became a credit sale, and a necessary prerequisite to the right to reclaim is a demand for the return of the goods made within ten days of their receipt. Neither Colorado nor other Code jurisdictions provide much help as to what constitutes sufficient "demand" for this purpose, nor how actively the seller must pursue his reclamation attempt. We must agree, however, with the referee that Bar Control by its conduct in this matter failed to achieve its desired status. Referring again to the Official Comment quoted above, the "follow up" by a person seeking to be a reclaiming seller is not defined. However, this "follow up" we take to mean a regaining of possession or a bona fide attempt to do so. Bar Control did not so act, and instead acquiesced in Colacci's retention of the goods for some four months after they were delivered, although not without some argument and without an expressed consent. The insistent demands were for payment, and Bar Control hoped to be paid for the equipment dur-

ing the stalling, and so allowed it to remain at Colacci's. Not until March 18, 1970, and after two creditors' meetings, did Bar Control take action to "follow up" its demand. Bar Control thus did not become a "reclaiming seller." In re Behring & Behring, 5 U.C.C.Rptg.Serv. 600, 42 Ref.J. 92 (N.D.Tex.1968); R. Duesenberg and L. King, 2 Bender's Uniform Commercial Code Service, Sales and Bulk Transfers, § 13.03(4)(c), at 13–18 n. 24.1 (1973 Cum.Supp.). The subsequent repossession was ineffective to improve its position in this respect or in any other respect.

Bar Control next asserts that by the retaking of the equipment, it "cancelled" the sales agreement as a remedy under the Uniform Commercial Code § 2–703(f). The Code does not provide much detail as to this as a remedy. However, the argument of appellant based thereon is no more than an attempt to describe the consequences of seller's action with a relation back. This as a "remedy" of the seller is unrealistic in the face of the filing of the petition for bankruptcy within four months thereafter. The "cancellation" by retaking the goods could not be effective because whatever the action is called, it was still a "transfer" within the meaning of the Bankruptcy Act "for or on account of an antecedent debt" within four months of the filing of the bankruptcy petition. See Glessner v. Massey-Ferguson, Inc., 353 F.2d 986 (9th Cir.); see also In re Helms Veneer Corp., 287 F.Supp. 840 (W.D.Va.1968).

There is nothing in the record to support an argument that the seller had even an unperfected security interest in the equipment.

We must hold that the repossession of the bar equipment by Bar Control constituted a preferential transfer under sections 1(30) and 60a of the Bankruptcy Act, 11 U.S.C. §§ 1(30), 96(a), as did the trial court and the referee. Other issues presented have been considered but need not be decided.

Affirmed.