637 F.2d 1172
 29 UCC Rep.Serv. 1489
 Willard BURK, Appellee,
v.
Bob EMMICK, d/b/a Emmick Cattle Company, Northwestern
National Bank of Sioux City, Iowa, a corporation,
Appellant.
Willard BURK, Appellee,
v.
Bob EMMICK, d/b/a Emmick Cattle Company, Northwestern
National Bank of Sioux City, Iowa, a corporation,
Appellant.
Willard BURK, Appellant,
v.
Bob EMMICK, d/b/a Emmick Cattle Company and Northwestern
National Bank of Sioux City, Iowa, a corporation, Appellees.
 Nos. 79-1976, 79-1977 and 79-2022.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 8, 1980.
Decided Nov. 13, 1980.
 
 Edward Keane, Robert W. Green, Sioux City, Iowa, argued, Jacobs, Gaul, Nymann & Green, Sioux City, Iowa, for Northwestern Nat. Bank of Sioux City and Bob Emmick.
 William J. Rawlings, Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, Iowa, for Willard Burk.
 Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 * This appeal arises out of a transaction in which plaintiff Willard Burk contracted to sell approximately 950 head of yearling steers to defendant Bob Emmick, d/b/a Emmick Cattle Company. The terms of the sales contract provided that the buyer would make a $15,000 down payment and tender the balance upon delivery.
 
 
 2
 The contract was amended, postponing the delivery date and modifying the manner in which payment would be made. The amended agreement called for payment of a major portion of the purchase price at delivery by sight draft drawn upon the codefendant, Northwestern National Bank of Sioux City. The balance of the purchase price was to be covered by the buyer's personal note. Just prior to delivery, the defendant Bank orally guaranteed to the seller that funds were available to cover the sight draft so that delivery could be made. The seller made delivery, but the sight draft was not accepted by the Bank and the buyer's personal note was never honored.
 
 
 3
 Subsequent to these transactions, the seller reclaimed the cattle and resold them for less than the original contract price. Thereafter, the seller sued the buyer in the United States District Court for the Northern District of Iowa, alleging breach of contract and fraud. The seller also sued the Bank on a promissory estoppel theory, reasoning that he detrimentally relied upon the Bank's oral assurance that funds were available to cover the sight draft, thus inducing the seller to make delivery and suffer pecuniary injury.[1] The case was tried to a jury and a verdict was returned on the seller's breach of contract claim against the buyer in the amount of $19,300. The jury also returned a verdict in the seller's favor against the Bank on the promissory estoppel claim in the amount of $24,700.
 
 
 4
 All parties filed post trial motions. The seller moved to amend the judgment by increasing the amount of the award. The buyer and the Bank moved for judgment notwithstanding the verdict, for a new trial, and to amend the judgment. All motions were denied, and all parties appealed. We affirm.
 
 II
 
 5
 The buyer and the Bank argue that Iowa Code § 554.2702[2] controls this case. The buyer contends this section bars a seller who successfully reclaims goods from further recovering a deficiency judgment. The Bank agrees that section 2-702 applies, but asserts that because the seller failed to demand return of the goods within ten days of delivery, the reclamation was improper. The Bank asserts that it has an interest in the cattle superior to the unpaid seller based upon a preexisting security interest covering after-acquired property of the defendant buyer.
 
 
 6
 In resolving the questions posed by this appeal, we first determine the relative rights of the parties involved in this sales transaction.
 
 
 7
 A. The rights of the secured party under section 2-403.
 
 
 8
 Section 2-403 gives a transferor power to pass good title to certain transferees even though the transferor does not possess good title. This section contemplates the situation in which a cash seller delivers goods to a buyer who pays by a draft that is subsequently dishonored, and then transfers title to a good faith purchaser. U.C.C. §§ 2-403(1)(b) & (c). In such a situation, as between the good faith purchaser and the unpaid seller, the former's claim is clearly superior. Swets Motor Sales, Inc. v. Pruisner, 236 N.W.2d 299, 304-305 (Iowa 1975).
 
 
 9
 Furthermore, section 2-403 does not limit the power of a transferor to pass good title only through sales transactions. The language of the Code specifically provides that "purchasers" may take good title from transferors. The term purchaser is broadly defined in the Code to include an Article IX secured party. See U.C.C. §§ 1-201(32) & (33); Swets Motor Sales, Inc. v. Pruisner, supra, 236 N.W.2d at 304. See also In re Samuels & Co., 526 F.2d 1238, 1242 (5th Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976). Here, if the Bank had acted in good faith, its interest in the cattle would be superior to the aggrieved seller. However, as the district court noted, the issue was properly submitted to the jury and the jury determined that the Bank did not exercise good faith. Accordingly, the Bank does not qualify as a good faith purchaser under section 2-403. As between the seller and the Bank, the seller's interest in the cattle is superior.[3]
 
 
 10
 B. The rights of the cash seller under the U.C.C.
 
 
 11
 Section 2-703 indexes the remedies available to a seller upon the buyer's breach. The right of reclamation is not specifically mentioned there. The cash seller's right to reclaim has been drawn from the language of sections 2-507 and 2-511.[4]
 
 
 12
 Section 2-507(2) gave the seller in this case the right to reclaim the cattle which were sold and not paid for. The buyer's main contention is that once the seller had successfully reclaimed the goods, he could not also seek a deficiency judgment. The buyer asserts the election of remedies provision in section 2-702(3) is applicable to a cash seller's section 2-507 right of reclamation. We do not agree. There is nothing in the language of the Code or the Comments to suggest that the election of remedies provision applies to a cash seller's reclamation under section 2-507. In fact, the concept of election of remedies is foreign to the liberal remedial provisions intended by the drafters of the U.C.C. See § 2-703 Comment 1. See also 2 R. Anderson, Uniform Commercial Code, § 2-703:5 at 337 (1971).
 
 
 13
 The buyer also asserts that the seller failed to demand reclamation within ten days of delivery of the cattle. Some courts have decided that a cash seller's reclamation right is subject to the ten-day limitation provision covering credit sale transactions involving insolvent buyers under section 2-702, but those decisions are factually dissimilar.[5] The courts that have imposed the ten-day limitation have concerned the respective rights of a good faith purchaser or trustee in bankruptcy and an unpaid seller.[6] But here, a good faith purchaser is not involved. Nor are we faced with the conflicting interests of an unpaid seller and a trustee in bankruptcy representing the interests of a bankrupt's creditors. Rather, the conflict is between the unpaid cash seller and the breaching buyer, and the question is whether the seller may reclaim and recover a deficiency judgment from that buyer.
 
 
 14
 It is instructive to note that the buyer in the case at bar has never forcefully opposed the seller's right to reclaim; rather, it has focused its primary attention upon the seller's right to a deficiency. This is understandable in light of the fact that the buyer was not prejudiced by the seller's reclamation, improper or not. Had the seller not reclaimed the goods, he could have sued for the full contract price. See U.C.C. §§ 2-703, 2-709.
 
 
 15
 Our holding is quite limited. We determine that as between the seller and the buyer, where a cash seller reclaims goods sold to a breaching buyer, the only limitation imposed upon the seller's right is a reasonableness requirement. Since we determine that the buyer was not prejudiced by the seller's delay in reclaiming the cattle, we find the seller's reclamation was not unreasonable.
 
 
 16
 Furthermore, the district court was correct in determining that section 2-702 did not properly apply to the instant case. By its very terms, that section applies when the seller discovers the buyer to be insolvent and when the underlying transaction is a credit sale. The transaction that gave rise to this lawsuit was a cash sale. As the district court reasoned, the fact that payment was made by a draft that was subsequently dishonored does not alter the nature of the underlying transaction. See In re Helms Veneer Corp., 287 F.Supp. 840, 844 (W.D.Va.1968).
 
 
 17
 The district court properly determined that section 2-703 controls this case. This section declares the right of the aggrieved seller to: (1) withhold delivery; (2) stop delivery by any bailee; (3) proceed under section 2-704; (4) resell and recover damages as provided in section 2-706; (5) recover damages for nonacceptance or the price; or (6) cancel. In this case, the seller properly chose the fourth alternative. This section's applicability to this case is highlighted by Official Comment 3, which provides: "In addition to the typical case of refusal to pay or default in payment, the language in the preamble, 'fails to make a payment due,' is intended to cover the dishonor of a check on due presentment, or the non-acceptance of a draft * * *." U.C.C. § 2-703 Official Comment 3.
 
 
 18
 In this case, when the draft was not accepted by the Bank, the seller chose to reclaim the cattle pursuant to section 2-507 and resell them. Section 2-703(d) allows the seller to recover a deficiency judgment upon a reasonable resale.
 
 III
 
 19
 Finally, section 2-706 provides that the recoverable deficiency is the difference between the original contract price and the amount realized upon a commercially reasonable resale. The jury was properly instructed on the section 2-706 damage formula. The district court further instructed the jury that
 
 
 20
 in the event you find for the plaintiff Burk and against the defendant Emmick in Count I of the Complaint but find that the plaintiff Burk's resale of the cattle was not effected in good faith and in a commercially reasonable manner, the actual and compensatory damages to which the plaintiff Burk is entitled is the difference between the market price at the time and place for delivery and the unpaid contract price agreed upon by Burk and Emmick, together with any incidental damages, but less expenses saved in consequence of buyer's breach.
 
 
 21
 If the measure of damages provided in the above paragraph is inadequate to put the seller in as good a position as full performance of the contract by the defendant Emmick would have done, then the measure of damages is the profit (including reasonable overhead) which the plaintiff Burk would have made from full performance by the defendant Emmick, together with any incidental damages and giving due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.
 
 
 22
 This was a proper instruction and the jury could rationally have used this damage formula in arriving at its damage award. The award is supported in the record as a whole. A jury award may not be set aside unless it is flagrantly inadequate or not supported by the record. See Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659 (Iowa 1969); Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 814 (1964). Since we determine that such is not the case here, the jury's verdict stands as rendered.
 
 
 
 [1]
 For a discussion of detrimental reliance and the reliance interest in contract damages, see J. Murray, Jr., Contracts § 91 (1974); Fuller & Perdue, The Reliance Interest in Contract Damages, 46 Yale L.J. 52, 373 (1936); Restatement (Second) of Contracts § 90 (1973). See generally Henderson, Promissory Estoppel and Traditional Contract Doctrine, 78 Yale L.J. 343 (1969)
 
 
 [2]
 It is undisputed that the Uniform Commercial Code as adopted in Iowa applies to this case. Throughout this opinion, we refer to the applicable statutory sections by their uniform designation
 Section 2-702 provides:
 (1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article.
 (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
 (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article. Successful reclamation of goods excludes all other remedies with respect to them.
 U.C.C. § 2-702 (cross references omitted).
 
 
 [3]
 Since we determine that seller's interest in the cattle is superior to the Bank, it is unnecessary to determine whether seller's reclamation was improper vis-a-vis the Bank. It should be noted, however, that the Colorado Court of Appeals, in addressing this issue, reasoned that "since (the third party purchasers) acted with notice of (seller's) claim to the livestock, they did not acquire the status of a good faith purchaser and cannot prevent (seller) from asserting its right of reclamation." Ranchers & Farmers Livestock Auc. Co. v. Honey, 38 Colo.App. 69, 552 P.2d 313, 315 (1976), cert. dismissed, 191 Colo. 503, 553 P.2d 799 (1976)
 
 
 [4]
 Section 2-507 provides:
 (1) Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract.
 (2) Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due.
 U.C.C. § 2-507 (cross references omitted).
 Section 2-511 states:
 (1) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery.
 (2) Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.
 (3) Subject to the provisions of this chapter on the effect of an instrument on an obligation, payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment.
 U.C.C. § 2-511 (cross references omitted); see In re Samuels, 526 F.2d 1238, 1244-1245 (5th Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); In re Helms Veneer Corp., 287 F.Supp. 840, 846 (W.D.Va.1968); In re Mort Co., 208 F.Supp. 309, 310 (E.D.Pa.1962); 2 R. Anderson, Uniform Commercial Code, § 2-507:8 at 94 (1971); J. White & R. Summers, Uniform Commercial Code, § 3-6 at 115 (2d Ed. 1980).
 
 
 [5]
 See, e. g., In re Samuels, supra, 526 F.2d at 1245; In re Colacci's of America, Inc., 490 F.2d 1118, 1120 (10th Cir. 1974); In re Helms Veneer Corp., supra, 287 F.Supp. at 846. See also In re Fairfield Elevator Co., 14 U.C.C.Rep.Serv. 96, 106-108 (S.D.Iowa 1973) (Bky.Ct.)
 The Code does not expressly require that § 2-702's ten-day limitation be applied to cash sale transactions not involving insolvent buyers. J. White & R. Summers, Uniform Commercial Code § 3-6 at 115 (2d Ed. 1980). Several factors militate against grafting § 2-702's limitation to cash sale transactions: (1) § 2-702 by its terms applies only to credit sales. (2) The seller's reclamation right is not dependent upon Comment 3 to § 2-507. The right to reclaim is inherent in the language of the statute. See Dugan, Cash Sale Sellers Under Articles 2 and 9 of the Uniform Commercial Code, 8 U.C.C.L.J. 330, 345-349 (1976); Mann & Phillips, The Cash Seller Under the Uniform Commercial Code, 20 B.C.L.Rev. 370, 383 & n.68 (1979). The limitation, at best, is only suggested by the Comment; the Comments to the Code cannot impose restrictions unwarranted by the statutory language. See Thompson v. United States, 408 F.2d 1075, 1084 n.15 (8th Cir. 1969); Dugan, supra at 341-342. (3) The legislative history of § 2-507 indicates that this section was intended to reflect the common law of cash sale transactions; the common law tradition includes the seller's right to reclamation. See generally Mann & Phillips, supra at 376-380, 383-384, & nn. 46-50 (1979).
 
 
 [6]
 But see Szabo v. Vinton Motors, Inc., 630 F.2d 1, (1st Cir., 1980). In Szabo, the First Circuit characterized the case before it as simply a question involving the relative rights of a reclaiming cash seller and a breaching buyer under § 2-507. Essentially, the Appeals Court ruled that the seller could only reclaim where the seller's demand for reclamation was made upon the buyer within ten days of delivery
 Szabo v. Vinton Motors, Inc., supra, concerned an appeal taken by the trustee in bankruptcy of the breaching buyer. Mr. Szabo, the trustee, argued that since the seller did not make a demand for reclamation within ten days after it sold an automobile to the buyer, it lost any special right to reclamation and stood before the court in the shoes of a general creditor. The First Circuit, moved by the trustee's argument, reversed the lower court order ruling otherwise.
 The Court's reasoning was simple; it stated that §§ 2-507 and 2-511 provide the cash seller the right to reclaim. The Court then noted that Official Comment 3 to § 2-507 imposed a ten-day limitation upon the cash seller's statutory right. Szabo v. Vinton Motors, Inc., supra, 630 F.2d at 3-4, citing In re Samuels & Co., supra, and In re Helms Veneer Corp., supra.
 We reject this reasoning. In our view, it would tend to coerce the cash seller who reasonably expects the buyer to tender payment at delivery to go through the cautious motions of a credit seller dealing with an economically unstable buyer. This we are not prepared to do.