[Civ. No. 22408. Third Dist. May 25, 1983.]

CITIZENS BANK OF ROSEVILLE, Plaintiff and Appellant, v.
RICHARD K. TAGGART et al., Defendants and Respondents;
BRAXTON MOTOR COMPANY, INC., Claimant and Respondent.

COUNSEL

Arthur M. Traugh and Raymond A. Policar for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

William E. Sherwood for Claimant and Respondent.

OPINION

**CARR, J.**—At issue in this appeal are the conflicting claims of a cash seller, Braxton Motor Company (hereafter Braxton) and a lien creditor, Citizens Bank of Roseville (hereafter Bank), to an automobile purchased by Richard Taggart (Taggart) by a check returned for insufficient funds. The trial court ruled in favor of Braxton. We affirm.

In 1980 and 1981, Bank extended credit to Taggart by way of two unsecured promissory notes in the face amounts of $15,000 and $5,000. Taggart defaulted on the notes and Bank brought suit in the Placer Superior Court, and secured a judgment against Taggart in excess of $30,000.[1]

A writ of execution was issued and in September 1982 the Placer County Sheriff levied on a 1982 brown four-door Cadillac, registered in Texas, with Taggart listed as the registered owner. No legal owner was identified on the registration.

On September 10, 1982, a third party claim was filed by Braxton pursuant to Code of Civil Procedure section 689. Braxton is an automobile dealer in the State of Oklahoma. On May 20, 1982, Braxton sold the Cadillac to Taggart for a cash price of $15,864.30, paid by Taggart by check. Before the check cleared, Taggart received the boon of the vehicle and a certificate of ownership. The check was subsequently returned for lack of sufficient funds.

In the third party claim proceeding, after hearing, a judgment was entered that Braxton had title to the Cadillac when the writ of execution was levied. Bank appeals.

We perceive the California Uniform Commercial Code[2] (Cal. U. Com. Code, §§ 1103, 2102) is controlling herein, and consider initially Braxton's right, if any, to reclaim the vehicle by reason of Taggart's failure to pay the purchase price.

The right of a cash seller to reclaim goods sold in a "bad check" transaction is not specifically treated in the code.[3] However, a reclamation right in a cash seller situation has been held to be inherent in sections 2507, subdivision (2)[4] and 2511, subdivision (3).[5] (*Burk* v. *Emmick* (8th Cir. 1980) 637 F.2d 1172,

---

[1]The judgment included the principal amount owed ($20,000) plus interest, costs, and attorney's fees.

[2]Hereafter, all statutory references are to the California Uniform Commercial Code unless otherwise indicated.

[3]By contrast, the reclamation right of a *credit* seller is specifically set forth in section 2702, subdivision (2). This section provides in relevant part: "(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the 10-day limitation does not apply. Except as provided in this subdivision the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

[4]Section 2507 provides: "(1) Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract. [¶] (2) Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due."

[5]Section 2511 provides in pertinent part: "(1) Unless otherwise agreed tender of payment is a

1174; *Szabo* v. *Vinton Motors, Inc.* (1st Cir. 1980) 630 F.2d 1, 3; *Catalina Yachts* v. *Old Colony Bank & Trust Co.* (D.Mass. 1980) 497 F.Supp. 1227, 1237; see Mann and Phillips, *The Cash Seller Under The Uniform Commercial Code* (1979) 20 B.C.L.Rev. 370, 375-384 (hereafter cited as *Mann & Phillips*).) Section 2507, subdivision (2), makes a buyer's "right as against the seller to retain or dispose of [the goods] . . . conditional upon his making the payment due." Section 2511, subdivision (3), provides "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." ■ These provisions, construed together, evidence a legislative intent that a buyer cannot retain and, conversely, a seller has the right to reclaim goods sold in a cash transaction if the buyer's check is dishonored. (*Burk* v. *Emmick, supra,* 637 F.2d at pp. 1174-1176; *Szabo* v. *Vinton Motors, Inc., supra,* 630 F.2d at p. 3.)

Bank acknowledges Braxton's right to reclaim the automobile pursuant to provisions of section 2507, subdivision (2), and section 2511, subdivision (3), but asserts this right to reclaim is subject to the 10-day limitation imposed on credit sale transactions to insolvent buyers found in section 2702, subdivision (2) (see fn. 3 *ante*). Bank cites *Szabo* v. *Vinton Motors, Inc., supra,* in support of this assertion.

*Szabo* discussed the rights of a reclaiming cash seller and a breaching buyer pursuant to provisions of section 2507 (630 F.2d at pp. 3-4, fn. 4), and determined the seller could only reclaim when a demand for reclamation was made on the buyer within 10 days of delivery; that sections 2507 and 2511 provide the cash seller the right to reclaim, but such right is limited by comment 3 to section 2507, which states: "Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's 'right as against the seller' conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this Article. Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. *The provision of this Article for a ten day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer [§ 2702] is also applicable here.*" (Italics added.) Noting the reference in the last sentence of comment 3 of section 2507 to the provisions of section 2702, subdivision (2), the court held there is a 10-day limitation upon the cash seller's statutory right of reclamation. (*Id.,* at pp. 3-4; accord *Matter of Samuels & Co., Inc.* (5th Cir. 1976) 526 F.2d 1238, 1245; *In re Helms Veneer Corporation* (W.D.Va. 1968) 287 F.Supp. 840, 845-846.) The *Szabo*

condition to the seller's duty to tender and complete any delivery.

"(2) Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business. . . .

"(3) Subject to the provisions of this code on the effect of an instrument on an obligation (Section 3802), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment."

court acknowledged its holding could on occasion work a hardship on the cash seller who might lose a right to reclaim before receiving notice that the buyer's check had been dishonored but observed that a cash seller is not defenseless. He is free to require payment by certified check, or he could take and perfect a purchase money security interest in the goods. (*Id.*, at p. 4.)[6]

*Szabo* is not without its critics. In *Burk* v. *Emmick,* supra, involving a cash seller and breaching buyer, the court agreed with *Szabo* that a cash seller's right to reclaim is inherent in section 2507, subdivision (2) and 2511, subdivision (3). (637 F.2d at pp. 1174-1176.) The *Burk* court refused, however, to follow that part of *Szabo* holding a cash seller's reclamation right subject to the 10-day limitation involving credit sales transactions and insolvent buyers under section 2702. Instead, *Burk* held the only limitation on a cash seller's right to reclaim is that it be exercised within a reasonable period of time. (*Id.,* at p. 1176.) We agree this is the more reasonable standard.

Several factors militate against grafting section 2702's 10-day limitation to cash sale transactions, not the least of which is that nothing in the code expressly requires such limitation. (See *Burk* v. *Emmick, supra,* 637 F.2d at p. 1175, fn. 5; White & Summers, Uniform Commercial Code (2d ed. 1980) ch. 3, § 3-6, p. 115.) The 10-day limitation upon reclamation applies *expressis verbis* only to credit sales involving insolvent buyers. (Dugan, *Cash-Sale Sellers Under Articles 2 and 9 of the Uniform Commercial Code* (1976) 8 U.C.C. L.J. 330, 341 (hereafter *Dugan*).) "[I]f the Code draftsmen intended to make the cash reclamation right identical to that of credit sellers, it is difficult to see why they would embody these rights in separate and differently-worded sections." (Note, *The Rights of Reclaiming Cash Sellers when Contested by Secured Creditors of the Buyer* (1977) Colum.L.Rev. 934, 940 (hereafter *The Rights of Reclaiming Cash Sellers*).)

Moreover, a cash seller's reclamation right is not dependent upon comment 3 to section 2507, but rather is inherent in the language of both that section and section 2511, subdivision (3). (*Burk* v. *Emmick, supra,* 637 F.2d at p. 1175, fn. 5; see *Mann & Phillips, supra,* at p. 383 and fn. 68.) The legislative history of section 2507 indicates the section was intended to reflect the common law of cash sale transactions, which traditionally included the seller's right to reclamation subject only to the condition the seller act reasonably in asserting such right. (*Burk* v. *Emmick, supra,* 637 F.2d at p. 1175, fn. 5; *Mann & Phillips,*

---

[6]The *Szabo* court continued: "A cash seller who declines to take these precautions does so at his own risk. . . . We hold that the ten day limitation period contained in Comment 3 provides a more certain guide for conducting commercial transactions than the common law yardstick of 'reasonableness,' and that it will encourage cash sellers to make prompt presentment. Any extension of the ten day limitation period based on the realities of the commercial banking world is for the legislature, not this Court." (630 F.2d at p. 4.)

*supra,* at pp. 376-380 and fns. 46-50; pp. 383-384.) The 10-day limitation, at best, is only suggested by the comment. (*Burk* v. *Emmick, supra,* 637 F.2d at p. 1175, fn. 5.) "[I]t is the Code provisions [however] and not the Comments which control." (*Szabo* v. *Vinton Motors, Inc., supra,* 630 F.2d at p. 4.) The comments to the code do not have the force of law and cannot impose restrictions unwarranted by the statutory language. (*Burk* v. *Emmick, supra,* 637 F.2d at p. 1175, fn. 5; *Mann & Phillips, surpra,* at p. 383; *Dugan, supra,* at p. 346.)

We are not in rapport with the suggestion in comment 3 to section 2507 that section 2702's 10-day limit on reclamation applies to the cash seller. (See *Mann & Phillips, supra,* at p. 383.) "In a 'bad check' situation, the application of section 2-702(2)'s ten-day limitation works an unnecessary hardship on the seller since in most instances he will not discover that the check is bad within the ten days." (*Ibid.*; see *Dugan, supra,* at p. 346.)[7] Nor can we accept the suggestion in *Szabo* that a cash seller can protect himself by requiring a certified check or perfecting a security interest in the goods. As noted in *Burk*: "[Such reasoning] would tend to coerce the cash seller who reasonably expects the buyer to tender payment at delivery to go through the cautious motions of a credit seller dealing with an economically unstable buyer. This we are not prepared to do." (*Burk* v. *Emmick, supra,* 637 F.2d at pp. 1175-1176, fn. 6.) Comment 4 to section 2511 recognizes that payment by check is a commercially normal and proper method of payment. (See *In re Mort Co.* (E.D.Pa. 1962) 208 F.Supp. 309, 310-311.) It is difficult to harmonize this comment with comment 3 of section 2507 which, if applied to cash sellers, would force every cash seller to act like a credit seller. We do not believe such a result was intended.

Moreover, Braxton sold the automobile to Taggart (who immediately moved it to a different state) and was thereafter unable to locate the vehicle until notified by the Placer County Sheriff that the vehicle had been seized. To argue Braxton lost the right to reclaim because such right was not asserted within 10 days of delivery places sellers such as Braxton in a no-win situation. It is difficult to conceive of what exactly Braxton could have done to protect its rights. Thus, the common law requirement that a seller act "reasonably" in seeking to reclaim goods is a more appropriate and commercially sound standard. Because all intendments are in favor of the trial court's determination, we must presume the court below determined Braxton acted reasonably under the circumstances.

---

[7]As one commentator noted: "[A] ten-day period for reclaiming under section 2-507(2) may be unduly short in situations in which a check has been returned for insufficient funds. Such a check may have passed through several indorsers and banks, not being returned to the seller until after the buyer has had the goods for more than ten days. A seller who has negotiated or transferred a check in the ordinary court of his business ought not to be held to have waived his demanded payment solely because the banking process requires more than ten days to inform the seller that the check was dishonored." (Nordstrom, Handbook of the Law of Sales (1970) §§ 167, 501, 503.)

Having determined the rights of a cash seller are not restricted by the 10-day provision of section 2702, subdivision (2), we must now determine Braxton's rights as against the Bank. Neither section 2507, subdivision (2), the general cash sale provision, nor section 2511, subdivision (3), the "bad check" provision, describe the rights of the cash seller in relation to the rights of third parties; both sections by their terms apply only to the relationship between buyer and seller. (See fns. 4 and 5, *ante*; see also *Mann & Phillips, supra,* at p. 384.)

The pertinent code section for resolution of this question is section 2403. (*Mann & Phillips, supra,* at pp. 375-378, 384-394; see also *The Rights of Reclaiming Cash Sellers, supra,* at pp. 941, 944.) This section provides in relevant part: "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The delivery was in exchange for a check which is later dishonored, or

"(c) It was agreed that the transaction was to be a 'cash sale' . . . ."

This section gives a transferor power to pass good title to bona fide purchasers for value even though the transferor does not possess good title. (*Burk v. Emmick, supra,* 637 F.2d at p. 1174.) As noted in *Matter of Samuels & Co., Inc., supra,* 526 F.2d at page 1242: "Section [2403, subd. (1)] gives good faith purchasers of even fraudulent buyers-transferors greater rights than the defrauded seller can assert. . . . [¶] The provision anticipates a situation where (1) a cash seller has delivered goods to a buyer who has been paid by a check which is subsequently dishonored, [§ 2403, subds. (a)(2), (3)] and where (2) the defaulting buyer transfers title to a Code-defined 'good faith purchaser.' The interest of the good faith purchaser is protected *pro tanto* against the claims of the aggrieved seller. . . . The Code expressly recognizes the power of the defaulting buyer to transfer good title to such a purchaser even though the transfer is wrongful as against the seller. The buyer is granted the *power* to transfer good title despite the fact that under [§ 2507] he lacks the *right* to do so."[8]

---

[8] As noted in *Mann & Phillips, supra,* prior to the code, "[w]here a good faith purchaser for value bought the seller's goods from the buyer, courts were divided over which party prevailed, although twentieth century courts generally held that the seller lost his right to reclaim." (At p. 373; fns. omitted.)

Bank, however, does not have the status of a good faith purchaser, a fact which Bank conceded in the trial court.

Bank is a lien creditor.[9] Section 2403, subdivision (4), states: "The rights of . . . lien creditors are governed by the divisions on secured transactions (Division 9), bulk transfers (Division 6) and documents of title (Division 7)." Divisions 6 and 7, however, say nothing about the rights of lien creditors. (See *Mann & Phillips, supra,* p. 394.) Bank directs us to no provision in division 9 which sets forth the rights of a lien creditor vis-à-vis a cash seller. (See Sixth Progress Report to the Legislature, part 1: The Uniform Commercial Code, p. 466 (hereafter *Sixth Progress Report*).)[10] The code does not solve the priority problem as between a lien creditor and cash seller. (*Ibid.*)

Section 1103 empowers courts to look to the common law if the code has not displaced prior law. (*Ibid.*) ■ Under the common law, *the unpaid cash seller prevails over an attaching lien creditor.* (See *Mann & Phillips, supra,* at pp. 373-374, fn. 27 and authorities cited therein; pp. 393-394.) The California rule is in accord: "It is generally true that an attaching creditor in California takes subject to all secret liens and latent equities, unless protected by some specific statute, *and takes only the interest which his debtor has with all its infirmities.*" (*Sixth Progress Report,* at p. 466; italics added.) In *Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 225-226 [200 P.2d 785], the court stated: "[T]he well-settled rule [is] that an attaching creditor, seeking to subject the property of a debtor to the payment of his debt, obtains a lien only upon the title or interest which the debtor has, and where no actual interest is shown the attaching creditor gets nothing by virtue of his levy. The lien attaches to the real and not the apparent interest of the debtor." (See also *Barron* v. *Tattenham* (1962) 199 Cal.App.2d 128, 131 [18 Cal.Rptr. 676]; "The rule is well established that an attaching creditor who gives no new value has none of the characteristics of a bona fide purchaser. He stands in the shoes of the debtor, and his lien attaches only to the debtor's interest at the time of the levy.")

We are persuaded the common law rule is sound and particularly appropriate under the facts here presented. Bank, unlike the typical good faith purchaser for value, did not give value *for the automobile,* nor did Bank in making the loans rely on the ostensible ownership or voidable title of Taggart to the automo-

---

[9]Section 9301, subdivision (3), provides: "A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like . . . ."

[10]Indeed, section 9104 states in relevant part: "This division does not apply . . . (h) [t]o a right represented by a judgment; . . ." Thus, division 9 seemingly does not apply to judicial liens such as "[t]he lien of an unsecured creditor who arms himself with a judgment and levies . . . ." (White & Summers, Uniform Commercial Code (2d ed. 1980) § 22-2, p. 875, & fn. 15.)

bile.[11] There is no policy reason for granting Bank status equivalent to a good faith purchaser and allowing it priority over Braxton. (See *Mann & Phillips, supra,* at p. 389, fn. 98.)

We conclude the trial court correctly determined the rights of Bank subordinate to those of Braxton.

The judgment is affirmed.

Regan, Acting P. J., and Evans, J., concurred.

---

[11]As noted previously, the notes were unsecured and were executed prior to Taggart's acquisition of the automobile.