Joseph SZABO, Trustee in Bankruptcy of Bell Oldsmobile, Inc., Defendant, Appellant,

v.

VINTON MOTORS, INC., Plaintiff, Appellee.

No. 80–1146.

United States Court of Appeals, First Circuit.

Aug. 28, 1980.

Charles R. Bennett, Jr., Boston, Mass., with whom Riemer & Braunstein, Boston, Mass., was on brief, for defendant, appellant.

George Rosenberg, Boston, Mass., for plaintiff, appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and CAFFREY, District Judge.*

CAFFREY, District Judge.

This is an appeal from the district court's affirmance of a decision of the bankruptcy court. The sole issue presented is whether the district court erred in ruling that under the cash sale provisions of the Uniform Commercial Code a cash seller's ten day period for reclaiming goods runs from the date the seller receives actual notice that the buyer's check has been dishonored rather than from the date the buyer receives the goods. We reverse.

On June 27, 1977, appellee Vinton Motors, Inc. (Vinton) filed a petition in the bankruptcy court to reclaim an automobile, or the sale proceeds thereof, from appellant Joseph Szabo, trustee in bankruptcy of Bell Oldsmobile, Inc. (Bell). The principal defense raised by the trustee was that Vinton was barred from reclaiming the automobile by reason of Vinton's failure to make a demand for its return within 10 days of delivery.

The parties submitted an agreed statement of the following facts to the bankruptcy court: On Friday, February 18, 1977, Vinton, a Vermont corporation, delivered a 1977 Regency Oldsmobile to Bell, a Massachusetts corporation. Simultaneous with the delivery, Vinton receives Bell's check in the amount of $7,590.30 drawn on the Capital Bank & Trust Company of Boston (Capital). Vinton deposited this check in its account at The Citizens Savings Bank & Trust Company in St. Johnsbury, Vermont (Citizens) on Tuesday, February 22, 1977. On Wednesday, February 23, 1977, Bell executed an assignment for the benefit of creditors to Robert White as assignee. The

* Of the District of Massachusetts, sitting by designation.

next day Mr. White withdrew all of the funds in Bell's account and deposited them in his own name as assignee. On March 1, 1977, Vinton received a written notification from Citizens that Bell's check had been dishonored. At the time the check was written there were sufficient funds in Bell's account to cover the check. No demand for the return of the automobile was made by Vinton within 10 days of its delivery to Bell. On April 1, 1977, when the automobile delivered by Vinton was still in its possession, Bell was adjudicated a bankrupt. Vinton and the trustee in bankruptcy, appellant.Joseph Szabo, agreed that the automobile could be sold and the proceeds held in escrow pending resolution of Vinton's claim to the property.

The bankruptcy court held an evidentiary hearing on a fact issue not covered by the agreed statement, that is, when did Vinton make a demand on Bell's assignee for the return of the automobile. The bankruptcy judge found that Vinton made a sufficient demand for the return of the automobile approximately 10 days after it received actual notice of the check's dishonor.

The bankruptcy court first ruled that the sale of the automobile by Vinton to Bell was a cash, not a credit, transaction, and then reviewed federal decisions holding that the right of a cash seller under section 2–507 of the Uniform Commercial Code, Mass.Gen.Laws ch. 106, § 2–507 to reclaim goods sold upon dishonor of the buyer's check is limited to a period ending ten days after the buyer receives the goods. *In re Samuels & Co.*, 526 F.2d 1238 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Helms Veneer Corp.*, 287 F.Supp. 840 (W.D.Va.1968). The bankruptcy court declined to follow these decisions, but cited no cases as the basis for its failure to do so. It stressed the absence of any express limitation in section 2–507 on the cash seller's right to reclaim, noting that, in contrast, section 2–702 of the Code expressly requires a credit seller to reclaim goods sold to an insolvent buyer within 10 days from the date the buyer receives the goods. And, contrary to the other reported decisions, the bankruptcy court refused to accord any weight to the statement in Comment 3 to section 2–507 which incorporates the ten day limitation applicable to credit sales as applicable to cash sales. To do so, the bankruptcy court reasoned, would conflict with the common law concept of a cash sale, under which title does not pass to the buyer until payment is made. Absent an unambiguous limitation in section 2–507, the bankruptcy court refused to "accept the proposition that the framers of the code and the State Legislature intended to deprive a cash seller of his well established common law rights . . .," noting that in "the normal course of commercial events involving payment by check, the seller does not learn of its dishonor within ten days of the delivery of the goods." The bankruptcy court determined, however, that the framers of the code and the State Legislature did intend some statute of limitations. Thus, the bankruptcy court held that "as between a cash seller and buyer, where there has been no intervening bona fide purchaser, where payment has failed, the seller may reclaim his property within a reasonable time after he had actual notice or should have known of the default," and it further ruled that "ten days is tantamount to reasonable time." Based on the testimony given at the evidentiary hearing, the bankruptcy court found that a sufficient demand for return of the automobile had been made by Vinton within the required time period and awarded the proceeds of the sale to Vinton.

On appeal, the district court affirmed the decision of the bankruptcy court. Although the court accepted appellant's position that section 2–507(2), "as illuminated by Comment 3 thereto, requires a cash seller to make a demand for the return of the goods sold within ten days," the court ruled that the ten day period runs from the date formal notice of dishonor is received, not from the date the goods are received by the buyer. To hold otherwise, the district court reasoned, "would produce the anomalous result that a seller might lose its right to reclaim before it had any reason to believe reclamation for nonpayment was neces-

sary." To the extent the reported cases hold differently, the district court declined to follow them. Accepting the bankruptcy court's finding that the reclamation demand was made within the required time period, the district court upheld the award of the proceeds to Vinton.

Both parties on appeal accept the determination by the bankruptcy court that the sale of the automobile by Vinton to Bell was a cash, not a credit, transaction. The parties disagree, however, as to the scope of a cash seller's right under the Uniform Commercial Code to reclaim goods sold to a buyer whose check is subsequently dishonored.

Appellant contends that a cash seller must make a demand for return of the goods within ten days of delivery, regardless of when notice of dishonor is received. Since appellee Vinton concededly failed to make a demand within ten days of delivery, appellant argues that Vinton is not entitled to the proceeds of the sale of the automobile and must participate as a general creditor.

Although the right of a cash seller to reclaim goods sold in a "bad check" transaction is not specifically set forth in the Code provisions,[1] such a reclamation right is inherent in sections 2–507(2) and 2–511(3) of the Code, Mass.Gen.Laws ch. 106, §§ 2–507(2), 2–511(3). *In re Mort Co.*, 208 F.Supp. 309, 310 (E.D.Pa.1962); *In re Helms Veneer Corp.*, 287 F.Supp. 840, 845–46 (W.D.Va.1968). *See generally* Mann & Phillips, *The Cash Seller Under The Uniform Commercial Code*, 20 B.C.L.Rev. 370, 375–84 (1979). Section 2–507(2) makes a buyer's "right as against the seller to retain or dispose of [the goods] . . . conditional upon his making the payment due."

Section 2–511(3), in turn, provides that "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." Taking these two Code provisions together, the clear implication is that a buyer cannot retain and, conversely, a seller has the right to reclaim goods sold in a cash transaction if the buyer's check is dishonored.

The existence of the cash seller's right to reclaim is further supported, and limited, by Comment 3 to section 2–507:

"Subsection (2) deals with the effect of a conditional delivery by the seller and in such a situation makes the buyer's "right as against the seller" conditional upon payment. These words are used as words of limitation to conform with the policy set forth in the bona fide purchase sections of this Article. Should the seller after making such a conditional delivery fail to follow up his rights, the condition is waived. The provision of this Article for a ten day limit within which the seller may reclaim goods delivered on credit to an insolvent buyer is also applicable here."

The reference in the last sentence of Comment 3 is to the limitation contained in section 2–702(2) requiring a credit seller to reclaim goods within ten days of receipt. See note 1 *supra*. Based on this reference, courts have invariably held that a cash seller must make a demand for the return of the goods within ten days after the goods are received by the buyer. *E.g., In re Samuels & Co.*, 526 F.2d 1238, 1245 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Helms Veneer Corp., supra*, at 846.[2]

Appellee urges us to disregard the limitation contained in Comment 3 on the ground that it directly contradicts the language of

---

1. By contrast, the reclamation right of a credit seller is specifically set forth in section 2–702(2) of the Code, Mass.Gen.Laws ch. 106, § 2 702(2):

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day lim-

itation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

2. The one decision which held that the cash seller's right to reclaim is not strictly limited by the ten day limitation, *In re Samuels & Co.*, 510 F.2d 139, 147–48 (5th Cir. 1975), was reversed in the en banc decision cited above.

the Code. Although Official Code Comments do not have the force of law, they are helpful in explaining the Code provisions and their purpose is to promote uniformity in construction. Mass.Gen.Laws ch. 106, Comment to Title; *Thompson v. United States*, 408 F.2d 1075, 1084 n.15 (8th Cir. 1969). *See generally* Skilton, *Some Comments on the Comments to the Uniform Commercial Code*, 1966 Wisc.L.Rev. 597. It has been stated that the Official Comments "are powerful dicta." *In re Yale Express System, Inc.*, 370 F.2d 433, 437 (2d Cir. 1966). Nevertheless, it is the Code provisions and not the Comments which control. We do not, however, accept appellee's argument that there is a direct conflict between the cash sale provisions of the Code and Comment 3 to section 2–507. As noted above, Comment 3 supports a reclamation right which is only implicit in sections 2–507(2) and 2–511(3), and limits that right by reference to another Code provision, section 2–702(2), dealing with credit sales. Comment 3 does not contradict, but merely complements and explains the Code. We decline to disregard it.

 Although, as the district court noted, the rule we embrace today may on occasion work a hardship on the cash seller since he may lose his right to reclaim before receiving notice that the buyer's check has been dishonored, the cash seller is not defenseless.[3] A seller is free to require payment by certified check, see section 3–411, Mass.Gen.Laws ch. 106, § 3–411; and he can take and perfect a purchase money security interest in the goods, section 9–107(a), 9–312(3), Mass.Gen.Laws ch. 106, §§ 9–107(a), 9–312(3). A cash seller who declines to take these precautions does so at his own risk. Moreover, even at common law a cash seller's right to reclaim was not unlimited and could be lost as the result of an unreasonable delay in exercising that right. *Frech v. Lewis*, 218 Pa. 141, 67 A. 45 (1907). *See*

Note, *The Rights of Reclaiming Cash Sellers When Contested by Secured Creditors of the Buyer*, 77 Colum.L.Rev. 934, 942 & n.53 (1977). We hold that the ten day limitation period contained in Comment 3 provides a more certain guide for conducting commercial transactions than the common law yardstick of "reasonableness," and that it will encourage cash sellers to make prompt presentment. Any extension of the ten day limitation period based on the realities of the commercial banking world is for the legislature, not this Court.[4]

*Reversed.*

---

**3.** Moreover, the hardship in such a case is no greater than that imposed by § 2–702(2)'s ten day limit on credit sale reclamations. A credit seller who discover his buyer's insolvency more than ten days after delivery of the goods is unable to exercise his right to reclaim. In both cases, the seller has an incentive to exercise due diligence.

**4.** No issues have been raised in this appeal as to the rights of a cash seller relative to third parties, such as secured creditors, lien creditors and the trustee in bankruptcy, *see generally* Mann & Phillips, *supra.*