**In re KORO CORPORATION, Debtor.**

**PLASTIC DISTRIBUTING CORPORATION,**
**Plaintiff,**

**v.**

**KORO CORPORATION, Defendant.**

**Bankruptcy No. 81–00117–HL.**
**Adv. No. A81–0186.**

United States Bankruptcy Court,
D. Massachusetts.

April 28, 1981.

David J. Gass, Waltham, Mass., for plaintiff.

Joanne M. Neale, Craig & Macauley, P.C., Boston, Mass., for defendant.

Herbert C. Kahn, Boston, Mass., for S. Shore Bank.

## FINDINGS AND RULINGS ON MOTION FOR SUMMARY JUDGMENT

HAROLD LAVIEN, Bankruptcy Judge.

*Findings of Fact*

At the hearing on Defendant's Motion for Summary Judgment, the following were the only material facts, all of which were uncontested.

On January 27, 1981, the Plaintiff, Plastic Distributing Corporation (hereinafter P D C) sold the Defendant Debtor, Koro Corporation, 13,900 pounds of 350 Natural ABS plastic pellets, in what was intended by all parties to be a cash transaction. The pellets were delivered on January 27 and manufactured by Koro into plastic sheet for resale to a third party on the same day. At the time of the delivery, P D C accepted Koro's check for $11,745.50 as payment in full for the pellets. On January 28, 1981, an involuntary bankruptcy was filed against Koro by three of its unsecured creditors.[1] On February 4, 1981, Koro's check was dishonored when presented for payment by P D C. On February 6, the Vice-President of P D C telephoned Koro's plant manager and demanded that Koro return the plastic pellets to P D C. P D C never made a written demand for the return of the pellets on Koro.

On February 6, Koro could not return the pellets since they had already been converted by Koro's manufacturing process into plastic sheets and the bulk of which had already been sold and delivered to a third party bona fide purchaser. The remaining plastic sheets were also subsequently sold to

---

1. The case was converted to a Chapter 11 on February 2, 1981.

a third party bona fide purchaser. Koro refused to pay for the pellets and while P D C sought to claim the proceeds, it was concededly unable to trace any proceeds attributable to the pellets.

The South Shore Bank had a long standing valid security interest in the Debtor's inventory, receivables and after acquired property including inventory, receivables, and proceeds.

*Discussion*

■ I believe that 11 U.S.C. § 546(c) was intended to apply to "any statutory right or common law right of a seller . . . to reclaim . . ." with no express distinction between credit and cash sales. To the extent that 11 U.S.C. § 546(c)[2] is applicable to this cash transaction, the remedy of reclamation is not available to the Plaintiff since Plaintiff made no written demand on Koro and, therefore, failed to comply with § 546(c)(1).

■ 2. To the extent that Mass.Gen. Laws Ch. 106 § 2–703[3] applies to this cash transaction, 11 U.S.C. § 546 was intended to avoid the previous conflicting decisions and supplanted that section and, therefore, the lack of a written demand is fatal.

■ 3. To the extent that neither Mass. Gen.Laws Ch. 106 § 2–702 nor § 546 of the Bankruptcy Code applies because this is a cash transaction,[4] Plaintiff still cannot recover under Mass.Gen.Laws Ch. 106 §§ 2–507(2),[5] or 2–511(3),[6] since there was no property to reclaim. The property sought to be reclaimed was not in existence in its original form on February 6, 1981 and the bulk of the manufactured new product had already been sold to a third party bona fide purchaser (the day on which Plaintiff made its oral demand).

■ P D C would then have the Court recognize a claim to the proceeds; however,

2. 11 U.S.C. § 546(c) provides:
(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—
(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—
(A) grants the claim of such a seller priority as an administrative expense; or
(B) secures such claim by a lien.

3. Mass.Gen.Laws Ch. 106 § 2–702 provides:
(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (section 2–705).
(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (section 2–403). Successful reclamation of goods excludes all other remedies with respect to them. St.1957, c. 765, § 1, effective Oct. 1, 1958.

4. For a general discussion of the problem *see* Mann and Phillips, "Section 546(c) of the Bankruptcy Reform Act: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee," 54 Am.Bankr.L.J. 239 (1980).

5. Mass.Gen.Laws Ch. 106 § 2–507(2) provides:
(2) Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due.

6. Mass.Gen.Laws Ch. 106 § 2–511(3) provides:
(3) Subject to the provisions of this chapter on the effect of an instrument on an obligation (section 3–802), payment by check is conditional and *is defeated as between the parties* by dishonor of the check on due presentment. (emphasis added)
Note 11 U.S.C. § 1107 gives a debtor-in-possession all the rights and powers of a trustee. 11 U.S.C. § 544 makes the trustee a judicial lien creditor. Massachusetts law makes an attaching creditor the equivalent of a purchaser for value, *American Soda v. Parsons*, 32 F.2d 737 (1st Cir. 1929).

even if the fact that the pellets themselves were not sold but integrated and assimilated in a new manufactured product did not present a short answer, the only basis of looking to the proceeds would be on some trust theory which by definition requires a trust res and here admittedly no such tracing of funds was made. *See* A. W. Scott, The Law of Trusts, (3rd ed. 1967), §§ 507–722.[7]

Moreover, South Shore Bank having a valid security interest with an after acquired clause in all the Debtor's receivable inventory and proceeds, would have a superior right to the proceeds. *In re Daley,* 17 U.C.C.Rep. 433 (Bkrtcy.Ct.D.Mass.1975).

In *Szabo v. Vinton Motors, Inc.,* 630 F.2d 1 (1st Cir. 1980), the Court answered the argument that in a cash transaction, seller would be remediless because it would not know of buyer's "bad check" until after 10-day period had expired, by simply suggesting if this was the creditor's concern, the seller should have required a certified check. In fact, in this case, P D C did know within the 10-day period of Koro's bad check (February 4), and could have made a written reclamation demand.

Motion for Summary Judgment allowed.

---

**7.** Plaintiff cites two cases to support the proposition that he should recover proceeds without regard to whether the property was in existence at the time demand for its return was made. The first, *In re Lindenbaums, Inc.,* 2 U.C.C.Rep. 495 (E.D.Pa.1964), is totally irrelevant and is contra to the First Circuit's holding in *Szabo v. Vinton Motors, supra,* and the second, *Greater Louisville Auto Auction, Inc. v. Ogle Buick,* 387 S.W.2d 17 (Ky.Ct.App.1965) was both distinguished and decided on its unique facts.