**In re Ronald EDGERTON, Debtor.**

**Bankruptcy No. 94–9215–8G3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 20, 1995.

Harvey Paul Muslin, Tampa, FL, for debtor.

Terry E. Smith, Trustee, Bradenton, FL.

David J. Tong, Tampa, FL, for movant.

## ORDER ON MOTION FOR RELIEF FROM STAY

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for hearing on the Motion for Relief from Stay filed by G.E. Capital Modular Space f/k/a Gelco Space, a Division of Transport International Pool, Inc., a Pennsylvania Corporation ("G.E."). In the Motion, G.E. asserts that it is entitled to relief from the automatic stay to obtain possession of a mobile office unit presently in the possession of Ronald Edgerton (the "Debtor") because the Debtor has no equity in the mobile office and it is not necessary for an effective reorganization. G.E. also asserts that its interest in the mobile office is not adequately protected within the meaning of § 361 and § 362(d)(1). In his Answer, the Debtor admits that he has not made any post-petition payments to G.E. He denies, however, the allegations that he has no equity in the property, that the property is not necessary for an effective reorganization, and that G.E.'s interest in the mobile office is not adequately protected.

Effective April 14, 1994, the Debtor and G.E. entered a Proposal and Agreement of Sale for the purchase and sale of the mobile office unit, 12′ × 48′, unit 195223, serial

number 31705. The total price for the mobile office was $8,768.89 and was to be paid in cash on delivery pursuant to the terms of the contract. When the mobile office was delivered, the Debtor gave G.E. a check in the amount of $8,768.89 made on the account of Yellow Rose Transportation Services, Inc. ("Yellow Rose"). The Debtor is the president and sole shareholder of Yellow Rose. The Debtor asserts that G.E. was aware at the time of the sale that the trailer was to be used by Yellow Rose. On May 6, 1994, Yellow Rose filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Shortly thereafter, Yellow Rose closed its checking account and the check written to G.E. was returned unpaid. Neither Yellow Rose nor the Debtor made subsequent payment for the unit. Moreover, the Debtor has refused to turn over the trailer to G.E.

On September 23, 1994, the Debtor filed his voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code. On October 6, 1994, G.E. initiated a replevin action in Pasco County, Florida. On October 19, 1994, an Order to Show Cause was issued by the county court directing the Debtor to appear before the court on November 28, 1994, and show cause why a writ of replevin should not be issued for the trailer. On October 28, 1994, the Debtor filed a Suggestion of Bankruptcy with the county court advising the court of the filing of the Chapter 13 petition and staying the replevin action.

On October 13, 1994, the Debtor filed his Statement of Financial Affairs and Schedules, including G.E. in Schedule D as a creditor with a claim in the amount of $7,500.00 secured by a modular trailer. On October 19, 1994, the Debtor filed his Chapter 13 Plan listing G.E. as the Class 4 creditor to receive the following treatment:

This creditor holds a Certificate of Title on a modular trailer located at 36302 State Road 52, Dade City, FL in the estimated amount of $7,500.00. Debtor signed a personal guarantee for this debt, however, this property is in the possession of Yellow Rose Transportation, Inc., a Chapter 11 debtor and is being paid through its Chapter 11 plan of reorganization. This creditor shall retain its lien.

The Debtor indicated that he would pay G.E. outside of the Chapter 13 plan and cure "the arrearages to the secured creditors ... within 18 months of confirmation."

On November 17, 1994, G.E. filed the Motion for Relief from Stay requesting an order terminating the automatic stay and permitting G.E. to proceed against the property including taking possession of the property. In the event that relief were to be denied, G.E. alternatively requested the Court to require the Debtor to provide adequate protection to G.E. of its interest in the mobile office. On November 23, 1994, the Debtor filed an Answer to the Motion for Relief from Stay denying G.E.'s statements that the Debtor had no equity in the property, that the mobile office was not necessary for an effective reorganization, and that G.E. was not adequately protected. On December 7, 1994, G.E. filed a Statement in support of its Motion indicating that it would be adequately protected if the Debtor paid it in full in the following amounts: $8,768.89 for the unpaid principal balance due, $467.03 for accrued interest, $752.00 for attorney's fees, and $60.00 for the filing fee.

This Court held a preliminary hearing on the Motion. Counsel for G.E. indicated that G.E. sought relief from the stay to continue with the replevin action in Pasco County. The Debtor indicated that he was willing to make adequate protection payments in the amount of $350.00 a month. Counsel for G.E. argued that G.E. did not want to be paid over time and that the original agreement was for cash on delivery of the mobile office. Counsel for G.E. further argued that if G.E. were forced to accept the proposed adequate protection payments, G.E. would become an involuntary lender to the Debtor because G.E. never agreed to extend credit to the Debtor.

The Court issued an order requiring adequate protection payments in the amount of $350.00 per month on an interim basis, and allowed counsel for each party to file briefs with respect to the propriety of relief from the stay.

The Uniform Commercial Code[1] has been adopted in Florida, and Chapter 672, Uniform Commercial Code—Sales,[2] applies to transactions in goods.[3] "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 678) and things in action.[4]

■ The Proposal and Agreement of Sale between the Debtor and G.E. is a contract for sale of goods.[5] G.E. agreed to sell and the Debtor agreed to buy the mobile office unit for the price and on the terms set forth. The price was $8,768.89 and the terms were cash on delivery.

"Where payment is due and demanded on the delivery to the buyer of goods, . . . his right as against the seller to retain or dispose of them is conditional upon his making the payment due." Fla.Stat. § 672.507(2) (1965). ". . . [P]ayment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." Fla.Stat. § 672.511(3) (1992).

The check delivered to G.E. by the Debtor was dishonored upon presentment, and therefore G.E. argues that the buyer does not have the right to retain the goods as against the seller. The buyer argues that the buyer may retain possession of the goods and that the seller becomes a creditor. The buyer is willing to allow the seller to be a secured creditor, and the buyer seeks to treat the seller as a secured creditor under the Chapter 13 plan by paying the creditor over the period of the plan the value, as of the effective date of the plan, of the secured claim.

■ If the Debtor has the right to retain the goods, then the Debtor may treat G.E. as a secured creditor and may pay G.E.'s claim through a Chapter 13 plan. If the Debtor does not have the right to retain the goods, however, the stay should be lifted to allow the G.E. to continue its replevin action.

In the case of *In re Szabo*, 630 F.2d 1 (1st Cir.1980), the First Circuit Court of Appeals considered the right of a cash seller to reclaim goods where the check in payment for the goods was dishonored. This is a 1980 opinion, dealing with the Uniform Commercial Code as it existed at that time in Massachusetts.

Although the right of a cash seller to reclaim goods sold in a "bad check" transaction is not specifically set forth in the Code provisions,[FN1] such a reclamation right is inherent in sections 2–507(2) and 2–511(3) of the Code, Mass.Gen.Laws. ch. 106, ss 2–507(2), 2–511(3). *In re Mort Co.*, 208 F.Supp. 309, 310 (E.D.Pa.1962); *In re Helms Veneer Corp.*, 287 F.Supp. 840, 845–46 (W.D.Va.1968). See generally Mann & Phillips, The Cash Seller Under the Uniform Commercial Code, 20 B.C.L.Rev. 370, 375–84 (1979). Section 2–507(2) makes a buyer's "right as against the seller to retain or dispose of (the goods) . . . conditional upon his making the payment due." Section 2–511(3), in turn, provides that "payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." Taking these two Code provisions together, the clear implication is that a buyer cannot retain and, conversely, a seller has the right to reclaim goods sold in a cash transaction if the buyer's check is dishonored.

---

FN1. By contrast, the reclamation right of a credit seller is specifically set forth in section 2–702(2) of the Code, Mass.Gen.Laws ch. 106, s 2–702(2): (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

1. Fla.Stat. § 671.101 (1991).

2. Fla.Stat. § 671.101 (1992).

3. Fla.Stat. § 672.102 (1965).

4. Fla.Stat. § 672.105(1) (1965).

5. Fla.Stat. § 672.106 (1965).

In the *Szabo* case, the court looked to Comment 3 to § 2–507 of the Uniform Commercial Code as it existed at that time in Massachusetts, and found that the Comment contained a reference to the provision of the UCC in Massachusetts (section 2–702) containing a ten day limit within which a seller may reclaim goods delivered on credit to an insolvent buyer. Because of the Comment, the court made that ten day limit applicable to sales transactions as well as the reclamation of goods in credit transactions. That court concluded that a cash seller who receives a bad check must make a demand for the return of goods within ten days after the goods were received by the buyer. The *Szabo* court pointed out that this may create practical problems,[6] but held that it should nevertheless be the law. The court stated that although Official Code Comments do not have the force of law, they "are powerful dicta." *Szabo*, 630 F.2d at 4.[7]

Section 2–507 of the Uniform Commercial Code as it has been adopted in Florida (§ 672.507) is identical to the corresponding section as adopted in Massachusetts and addressed by *Szabo*. Comment 3 to this section is also identical. Prior to 1990, the comment in both states contained the provisions as described in the *Szabo* case. In 1990, however, this comment was revised,[8] and the revised comment is now applicable in Florida (and in Massachusetts). In place of the reference to the ten day limit within which a seller may reclaim goods, Comment 3 as it now exists and as it existed at all relevant times to this matter in Florida provides:

> This Subsection (2) codifies the cash seller's right of reclamation which is in the nature of a lien. There is no specific time limit for a cash seller to exercise the right of reclamation. However, the right will be defeated by delay causing prejudice to the buyer, waiver, estoppel or ratification of the buyer's right to retain possession.

Common law rules and precedents governing such principles are applicable (Section 1–103)....

Accordingly, the Court should look to any claims that the delay caused prejudice to the buyer, and any claims of waiver, estoppel, or ratification of the buyer's right to retain possession, and the Court should look to common law rules and precedents governing these principles. In this case, there has been no assertion that the delay has been prejudicial, and there has been no assertion of waiver, estoppel, or ratification of the buyer's right to retain possession. In this circumstance, case law in Florida supports the creditor's right to possession:

> ... [T]here is absolutely no evidence to support the Debtor's proposition that the sale of the first group of equipment was on credit. This conclusion is completely supported by the undisputed fact that complete payment was due upon delivery. It is well established law in Florida that unless a sale is one on credit, title to personal property remains in the vendor and does not pass until performance by the purchaser is complete.... Accordingly, as neither the Debtor nor Bay Area made final payment to Kroslak, it is absolutely without question that the Debtor had only mere possession of the equipment and never obtained title to the property. Next, regarding the subsequent sale of the equipment which the Debtor attempted to pay for by the dishonored check, this Court is satisfied that title to this property additionally never passed, as in Florida sale and delivery of personalty is deemed to be conditional upon the honoring of the check tendered in payment by the bank upon which it is drawn. See *Trumbull Chevrolet Sales Co. v. Seawright,* 134 So.2d 829 (Fla. 1st D.C.A.1961); *Ragg v. Hurd,* 60 So.2d 673 (Fla.1952). Based on the foregoing, this Court is satisfied that the

---

**6.** "... [T]he rule we embrace today may on occasion work a hardship on the cash seller since he may lose his right to reclaim before receiving notice that the buyer's check has been dishonored ..." *Szabo*, 630 F.2d at 3.

**7.** It should be noted that the Eighth Circuit Court of Appeals rejected the reasoning of *Szabo* in the

case of *Burk v. Emmick,* 637 F.2d 1172 (8th Cir.1980).

**8.** *See* Commentary No. 1, Section 2–507(2), of the Permanent Editorial Board for the Uniform Commercial Code, March 10, 1990.

Debtor does not have a legal interest in any of the equipment obtained from Kroslak.

*In re Harlequin Dinner Theater*, 89 B.R. 944, 946 (Bankr.M.D.Fla.1988).

Accordingly, the Debtor does not have the right to retain the goods, the creditor has the right to reclaim the goods, and the stay should be lifted to allow the creditor to proceed with its replevin action.

**IT IS ORDERED** that:

1. The Motion for Relief from Stay filed by G.E. Capital Modular Space f/k/a Gelco Space, a Division of Transport International Pool, Inc., a Pennsylvania Corporation, is granted.

2. The movant may proceed with its in rem remedies against the following property: a mobile office unit, 12′ × 48′, unit 195223, serial number 31705.

3. The movant shall not pursue any in personam remedies against the Debtor.